In the Matter of MORTIMER WARFMAN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 3, 1983

APPEARANCES OF COUNSEL

*Michael A. Gentile* for petitioner.

*Irving Anolik* for respondent.

OPINION OF THE COURT

*Per Curiam.*

Petitioner, Departmental Disciplinary Committee for the First Judicial Department, moves for an order, pursuant to 22 NYCRR 603.4 (d), confirming a hearing panel's findings of fact and conclusions of law and recommendation that respondent Mortimer Warfman (respondent) should be disbarred. The hearing panel's (Panel) findings were referred to this court by petition dated October 19, 1982.

Respondent was admitted to practice in the Supreme Court, Second Judicial Department, in April, 1951 and he maintained an office for the practice of law in the First Judicial Department during the period covered by the statement of charges.

These disciplinary proceedings against respondent were commenced by the service of the statement of charges, dated April 30, 1981.

The specifications contained in the charges allege that respondent is guilty of dishonesty, fraud, deceit and misrepresentation in violation of DR 1-102 (A) (4) of the Code of Professional Responsibility, in that: (1) he knowingly converted to his own use clients' funds entrusted to him; and in that (2) he obtained money by false pretenses from persons he had induced to invest money with him.

The respondent answered the charges and thereafter hearings were held at which the respondent appeared and was represented by counsel. At these hearings the petitioner called witnesses, who were subject to respondent's cross-examination, and offered documentary evidence.

Examination of the Panel's findings of fact and conclusions of law reveal that the Panel discovered a pattern of dishonesty on the part of respondent in respect to the handling of money that had been given to him in a fiduciary capacity.

First, the Panel found respondent guilty of converting to his own use the funds that he received from insurance carriers concerning the settlement of personal injury claims. Two clients were involved in unrelated incidents and this fact supports the conclusion that respondent's conduct was not inadvertent but rather was intentional. The respondent's method of operation was the same in both cases. He deposited the settlement checks received from the carriers in his special account and then he withdrew the funds for his own purposes before paying these clients. When the clients complained to him about not receiving payment, he lied by stating the carrier had not yet sent out the check. Neither client was paid their share of the settlement until after this matter was before the Departmental Disciplinary Committee. One of the claimants did not receive her portion of a $2,350 settlement made in 1973, until approximately four years later; while the other claimant did not receive his portion of a $1,900 settlement, also made in 1973, until approximately six years later.

Second, the Panel found respondent guilty of stealing money from three persons, who had given him the money to invest. Again there was a pattern to respondent's dishonesty. He told all of these persons that the funds were to

be used to acquire second mortgages on real estate located in Kings County and that the investor would realize handsome returns from the acquisitions. In actual fact respondent did not obtain second mortgages but rather pocketed the funds for his own benefit. Respondent received thousands of dollars from his victims by practicing this deception, to wit: Albert Silverstein, $18,000; Martin Beck, $8,200; and Emanuel Beck, who is Martin Beck's brother, $5,559. In order to head off Emanuel Beck's threat to go to the District Attorney, respondent made full restitution to him. Of course, making restitution under these circumstances does not in any way lessen the seriousness of respondent's misconduct.

Respondent submitted a response to the petitioner's instant motion. As to the pattern of converting clients' funds, in one case he says he misplaced the file and in the other case he gives no excuse, besides stating that he has made restitution. Furthermore, as to the pattern of misusing investment funds, respondent admits receiving the funds, mentioned *supra,* from Silverstein and the Becks. However, respondent denies that he did anything wrong with the funds; but, this denial does not overcome the overwhelming credible evidence adduced before the Panel that supports the conclusion that respondent deliberately acted in an unprofessional manner in his handling of the funds so as to bring discredit upon the profession. Impliedly respondent admits that he is guilty of misconduct since he concludes his response by stating: "I do not deserve disbarment and I ask this Court to be lenient."

On the other hand, the Panel concludes their report by writing: "Having heard all the evidence and having considered respondent's post-hearing submissions, we find him to have been guilty of dishonest practices * * * The nature of the fraudulent conduct is such as to make him unfit to continue to practice law. We * * * [recommend] that respondent be disbarred."

This court has consistently imposed the penalty of disbarment where an attorney has converted escrow funds of his client[s] or a third party (*Matter of Marks,* 72 AD2d 399; *Matter of Wolf,* 73 AD2d 419; *Matter of Stults,* 77 AD2d 254, mot for lv to app den 53 NY2d 606; *Matter of*

*Field,* 79 AD2d 198; *Matter of Nadel,* 85 AD2d 8). We see no reason to deviate from this practice in the instant case.

Accordingly, the motion by the Departmental Disciplinary Committee to confirm the findings of fact and conclusions of law should be granted and respondent should be disbarred and his name stricken from the roll of attorneys and counselors at law.

MURPHY, P. J., SANDLER, SULLIVAN, ROSS and MILONAS, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors at law in the State of New York.