In the Matter of DANIEL R. PINELLO, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 8, 1984

### APPEARANCES OF COUNSEL

*Patricia Smillie-Scavelli* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Lynne F. Stewart* for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to practice as an attorney and counselor at law in March of 1976 by the Appellate Division of the Supreme Court, First Judicial Department. At all times relevant to the instant proceeding, he maintained an office for the practice of law in the First Judicial Department.

Petitioner Departmental Disciplinary Committee moves for an order confirming the findings of fact and conclusions of law of a hearing panel and directing that respondent be disbarred and his name stricken from the roll of attorneys. The facts herein are not in dispute since respondent has admitted to the charges against him, subsequently sustained by the hearing panel. The allegations are that on or about September 28, 1979, respondent consented to act as escrow agent under the terms of an agreement between the Concourse Center of Israel and Anthony Mansolillo, doing

business as Northern Appraisers. On or about April 7, 1980, respondent received the sum of $7,614.16 to be held by him in escrow in accordance with the terms of this agreement, and he deposited that amount in his escrow account at Chase Manhattan Bank, N.A. However, the balance of the escrow account fell below $7,614.16 on or about April 16, 1980, and the moneys therein continued to diminish until the account was closed for lack of funds on May 27, 1981. Respondent did not, at any time prior to May 29, 1981, disburse any of the escrow accounts pursuant to the escrow agreement.

Although respondent does not dispute the panel's finding that he has been guilty of dishonesty, fraud, deceit and misrepresentation in violation of DR 1-102(A) (4) of the Code of Professional Responsibility, he offers in mitigation of the sanction to be imposed the fact that no person sustained any financial loss as a result of his conduct and that, at the time of the events at issue, he was suffering from extreme emotional, psychological and physical distress due to: (1) his mother's illness with terminal cancer, (2) his own bout of hepatitis, (3) the violent and traumatic termination of the relationship between him and his lover, and (4) felony criminal charges, eventually dismissed, which were pending against him. In addition to these circumstances, respondent also refers to the character witnesses who testified before the hearing panel as to his competency, intellect, and moral character. In this connection, it should be noted that respondent's ability as a lawyer is not in question here. Moreover, he frequently applied himself to providing *pro bono* work for the community.

Virtually all lawyers who take money from an escrow account undoubtedly intend to restore the funds initially but later find themselves lacking the means to achieve this end. Most lawyers attempt to make restitution after their misdeeds have been discovered. It is, therefore, of no particular credit to respondent that he is repaying the converted funds, since it is to be expected that he would endeavor to do so. Moreover, in the instant situation, respondent did not replenish the escrow funds until a judgment was rendered against him for $3,071.39 in the

Supreme Court of the State of New York, New York County, affirmed by this court, and the outstanding balance is being held in a special account pending the determination of an appeal from a judgment of the Supreme Court of the State of New York, County of New York, in favor of the other party to the escrow arrangement. Thus, while it may be true that everyone concerned has already been, or will be, repaid, this does not negate the expense, inconvenience and lost time incurred as a result of the ensuing litigation.

Although we sympathize with respondent's personal problems, they should not furnish the basis for a reduction in his penalty. Attorneys confronted with disciplinary proceedings often contend that they acted under extreme emotional and/or physical disturbance; they frequently cite such factors as severe illness in the family, alcoholism, addiction to gambling, or marital or other pressures. Yet, absent extremely unusual circumstances, not here apparent, such personal problems cannot provide justification, even in mitigation, for wrongful behavior. Further, while we note respondent's community efforts, the same high professional standards are required of all lawyers, regardless of their affiliation, group membership or activities on behalf of that group.

This court has consistently imposed the penalty of disbarment where an attorney has converted the escrow funds of a client or third party. (*Matter of Borsher,* 93 AD2d 322; *Matter of Warfman,* 91 AD2d 356; *Matter of Nadel,* 85 AD2d 8; *Matter of Field,* 79 AD2d 198; *Matter of Stults,* 77 AD2d 254, mot for lv to app den 53 NY2d 606; *Matter of Wolf,* 73 AD2d 419; and *Matter of Marks,* 72 AD2d 399.) Whenever an attorney misappropriates funds from a client, faith in the legal profession is thereby eroded. A lawyer who steals from a client and thus violates the sacred trust reposed in him, should forfeit the right and the privilege to practice law. Only the ultimate punishment of disbarment can properly express our abhorrence for such conduct, protect the public and maintain confidence in the integrity of the legal profession.

Consequently, petitioner's motion should be granted. Respondent should be disbarred and his name stricken from the roll of attorneys and counselors at law.

KUPFERMAN, J. (dissenting in part). The respondent converted an escrow fund of over $7,000 although he has since made good on the amount.

While his action is not to be condoned, it seems to be a temporary aberration caused by personal and family problems.

As against this, we have the fact that the respondent has an excellent scholastic background which he has used for *pro bono* work and his generally helpful character has been attested to by substantial members of the community.

A member of the Departmental Disciplinary Committee hearing panel, in connection with a recommendation by the panel that the respondent be disbarred, indicated that he was troubled by it and would have advocated a different approach if not mandated by decisions of our court in escrow fund matters.

To suspend the respondent for three years, which is my suggestion, emphasizes the serious nature of the offense and can well serve as a deterrent to future such actions, but at the same time recognizes the mitigation aspects. Disbarment should not be mandated. There has to be some scale to various possible offenses. (Cf. *Matter of Bell,* 98 AD2d 351.)

SANDLER, J. (dissenting in part). This seems to me a very close case. I agree with the central principle that a lawyer's conversion of clients' funds should presumptively result in disbarment, and that this rule should be departed from only under the most compelling circumstances. I also acknowledge that the facts immediately connected with the conversion do not disclose the kind of mitigating facts that from time to time accompany these events, and which we have, in any event, usually found insufficient to mitigate the penalty.

The argument for imposing a penalty less than disbarment rests upon a coming together here of two circumstances.

First, the record establishes that during the relevant period a combination of significantly traumatizing events had severely disoriented respondent, rendering him, in his own words, "almost totally disfunctional psychologically

and emotionally." It is true that we have consistently found such claims of emotional disturbance insufficient to avoid the penalty of disbarment for the offense of conversion of clients' funds, and I would not depart from that approach if it were the only factor supporting mitigation.

The second factor in favor of mitigation arises from the respondent's special professional relationship to the homosexual community of the city, the members of which, as we know, are often the victims of harassment and discrimination. It appears that much of respondent's professional practice has been devoted to providing low-cost consulting services to members of that community, and that he has also acted professionally on many occasions without compensation. He appears to have earned over the years the trust and confidence of that particularly needful community.

This seems to me to constitute an affirmative showing of an exceptional character that is appropriately weighed here against disbarment. Considered together with the unusually compelling character of the emotionally traumatizing experiences that respondent underwent during the relevant period, I believe it would be appropriate to depart from the usual rule to the extent of imposing a suspension of three years.

MURPHY, P. J., ASCH and MILONAS, JJ., concur in a *Per Curiam* opinion; KUPFERMAN and SANDLER, JJ., dissent in part, in separate opinions.

Petition granted, and respondent disbarred from practice as an attorney and counselor at law in the State of New York, effective April 9, 1984.