In the Matter of WARREN J. BLACK (a Suspended Attorney), Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 2, 1987

## APPEARANCES OF COUNSEL

*Susan Brotman* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Donald J. Klein* for respondent.

### OPINION OF THE COURT

Per Curiam.

The Departmental Disciplinary Committee moves for an order pursuant to 22 NYCRR 603.4 (d) confirming the findings of fact and conclusions of law made by a Hearing Panel and disbarring respondent Warren J. Black from the practice of law.

Respondent Warren J. Black was admitted to practice as an attorney in the State of New York by this court on March 22, 1954. By order of this court dated October 11, 1984, he was suspended from the practice of law for a period of two years effective November 12, 1984, as a result of other, unrelated charges (103 AD2d 462). By order of this court dated February 13, 1986, his suspension was extended pending a hearing regarding alleged unauthorized practice of law during the time of his suspension. He has maintained an office for the practice of law within this Department at all times herein.

The Hearing Panel heard not only the charge that respondent had engaged in the practice of law during his period of suspension, but other charges as well.

Charge No. I accused respondent of conduct involving dishonesty, fraud, deceit or misrepresentation in his actions, *inter alia,* in seeking to obtain a loan from a client. Charge No. II accused respondent of conversion for mingling, failure to account and failure to return clients' funds. Charge No. III accused respondent of failing to obey the order of suspension and charge No. IV accused respondent of failure to maintain escrow funds in a special account and failure to deliver such funds, in violation of the Code of Professional Responsibility.

At the hearing, charge No. IV and part of charge No. I were withdrawn and respondent admitted he was guilty of the conduct described in charges Nos. II and III. At the conclusion of the hearing, the Panel found, based upon the evidence

adduced, that charge No. I in the statement of charges had been sustained and further sustained charges Nos. II and III based upon respondent's admission of guilt to the allegations contained therein.

The findings of the Hearing Panel in charge No. I were as follows:

Dorothy Grumberg retained the respondent in May 1976 to handle her husband's estate. She paid him $8,500 for this matter. As part of settling the estate, she requested respondent to prepare the tax returns applicable to the lump-sum distribution of Mr. Grumberg's pension. He advised her that he would use the income averaging method and assured her he would prepare and file the appropriate forms. In July of 1978, he wrote to her enclosing a "fiduciary tax return" which showed Federal tax due of $17,243.62, but which did not use the income averaging method. He requested she execute the form and return it to him together with a certified check payable to the Internal Revenue Service for the full tax owed. Mrs. Grumberg followed these instructions but, nevertheless, the respondent neither transmitted the form or check to the I.R.S. nor informed Mrs. Grumberg of his failure to do so. He met with her twice in each of the next two years when he prepared her yearly income tax returns for 1979 and 1980, but did not mention the tax return for her husband's pension distribution or his failure to file it.

In May 1980, he met with Mrs. Grumberg and he returned her two-year-old certified check, saying in his opinion the I.R.S. was not entitled to the money. (In the normal course of events, Mrs. Grumberg's bank shortly would have notified her that the certified check had not been cashed and would soon be out-dated.) He further asked her to obtain a new check for the same amount and lend these funds to him because he needed money. She replied she knew she owed taxes to the I.R.S. for the pension distribution and was worried she would be in trouble because he had not filed the return. She also refused to lend him any money.

The respondent assured Mrs. Grumberg that he had filed a document with the I.R.S. that would protect her and that after two years there was no danger of the I.R.S. ever catching up with the matter. He promised to send her a copy of the document which he claimed to have filed. Thereafter, she called his office almost daily but was told repeatedly that he was in court. When she still did not receive the promised

document or any evidence of the filing with the I.R.S., she wrote respondent on May 18, 1980 requesting an explanation of his handling of the matter and a copy of all filings he had made with the I.R.S. In a reply of June 11, 1980, respondent admitted he had never completed the fiduciary tax return but promised he would have this form ready by June 20th. He further promised that he would pay any penalty or interest assessed by the I.R.S.

After not hearing further from respondent, Mrs. Grumberg hired an accountant in August 1980 and then an attorney, Andrew Kristel, to represent her before the I.R.S. The accountant filed the appropriate return using the income averaging provisions, and after negotiations, Kristel persuaded the I.R.S. to waive penalties. Mrs. Grumberg was required, however, to pay interest of about $4,300 for the late filing. She also paid the accountant $300 and Kristel $1,000.

On March 4, 1982, Kristel wrote to respondent demanding he reimburse Mrs. Grumberg for the interest assessed by the I.R.S., together with his and the accountant's fees. When respondent did not reply to this letter, Kristel filed an action in Civil Court. Respondent defaulted and judgment was entered for Mrs. Grumberg in the amount of $6,000. Respondent defaulted in responding to all supplementary proceedings and, to date, the judgment remains unsatisfied.

Respondent asserts that charge No. I should be dismissed since staff counsel failed to prove his guilt and that it fails as a matter of law, to state a claim of professional misconduct. Respondent asserts that staff counsel promised him in December 1983 that he would not be charged with professional misconduct based upon the Civil Court judgment obtained on default by Dorothy Grumberg for legal malpractice. The Hearing Panel in its recommendations, however, noted that they did not consider the fact of respondent's default in the civil action to be a significant element of charge No. I and specifically stated it was not the basis for their findings and recommendations. In any event, as the Hearing Panel notes, the respondent failed to make any showing that he had any meritorious defense to Mrs. Grumberg's action. The record is replete not only with evidence of his liability, but also his unequivocal acknowledgments that he owed the money to Mrs. Grumberg. Likewise, respondent's contention that charge No. I is merely a claim that he failed to pay a debt and thus did not state a violation of the Code of Professional Responsibility is also without merit. Standing alone, the debt is not the

subject of the charges against him nor has his default been considered as a collateral estoppel or as any form of evidentiary admission. Rather, the basis of charge No. I is respondent's malfeasance of his professional obligations before Mrs. Grumberg ever filed suit.

Therefore, we conclude, as did the Hearing Panel, that respondent engaged in conduct involving neglect, in violation of Code of Professional Responsibility DR 6-101 (A) (3), in that he failed for two years to file the fiduciary tax return. His excuse that it was not necessary to file the return is an after-the-fact contrivance. He offered no evidence to refute the testimony that filing of the return was necessary. On the contrary, the respondent obviously believed such a filing was needed because in May 1981 he asked Mrs. Grumberg to execute a return and deliver a check to him for $17,243.62. Any claim that he subsequently determined that the filing was unnecessary is undermined by his failure to inform Mrs. Grumberg for two years that he was holding her funds, and we, as did the Panel, find such a sequence of events to be incredible.

Finally, respondent's circuitous way of telling Mrs. Grumberg that he had not filed the return, only shortly before she would otherwise have learned from her bank that the check had never been cashed, clearly indicated that he knew his conduct was neglectful. Respondent's neglect continued even after he informed her that the fiduciary return had not been filed and she requested that he rectify his mistake. Although he promised to do so, for months thereafter he neither filed the return nor adequately explained the delay to Mrs. Grumberg. Thus, the facts also support the conclusion that respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of DR 1-102 (A) (4). His statements to Mrs. Grumberg about the reasons why he originally failed to file the return were false and, moreover, he falsely told her that he had filed a document that would protect her from any penalty when he knew that he had made no such filing.

Respondent's conduct also adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) of the Code of Professional Responsibility. In addition to the conduct described above, respondent avoided the almost daily telephone calls from Mrs. Grumberg at a time when he knew she was deeply worried she had violated the tax laws and might be subject to substantial penalties. To mask his own misconduct

he falsely assured her that he had protected her from liability when, in fact, interest charges were continuing to accrue. Then, when she sought reassurance by requesting a copy of the alleged filing from respondent, he continued to lie about its existence and avoided her telephone calls. In a further attempt to escape the consequences of his neglect, he advised Mrs. Grumberg that the I.R.S. was unlikely to detect the absence of a filing two years after the pension distribution. This advice not only was inaccurate, it was tantamount to soliciting her to evade her tax obligation.

In charge No. II, to which respondent conceded guilt, the facts are as follows:

In or about March 1981, Barbara Sullivan, Stephanie Lennon and Janet Thomas, daughters of Joseph V. Grano, retained respondent to probate their father's estate. On or about May 6, 1981, Sullivan, the administratrix, entered into a contract for the sale of the primary estate asset, the premises at 1175 86th Street, Brooklyn, New York, for a price of $72,000, to Thomas and Florence Rich. Respondent received the contract deposit of $7,200 at that time and, in addition, in July 1981 he collected the proceeds of the deceased's bank accounts totaling $15,133.97.

After the closing of title, the respondent received two checks representing the majority of the net proceeds. One of the checks was a Citibank check in the amount of $17,800 which was endorsed to the estate of Joseph V. Grano. Respondent, without the knowledge or consent of the client, endorsed the $17,800 Citibank check to himself and converted the proceeds to his own use.

On November 5, 1981, he made partial distributions from the estate account to the heirs of the estate by giving $5,000 each to Thomas, Sullivan and Lennon and thereafter, without the knowledge or consent of the client, he converted $5,000 from the estate account for his own use. On November 30, 1981, without the knowledge or consent of his client, he converted an additional $3,000 from the estate account for his own use. The respondent failed to make a further distribution for about 19 months or render any accounting regarding said estate for a period in excess of two years. In or about June 1983, at Lennon's urging, respondent made a $5,000 distribution to Lennon only. In or about November 1983, at Sullivan's urging, respondent made a $10,000 distribution to Sullivan only.

Sullivan and Thomas continued to telephone respondent requesting that the matter be completed. From mid-November 1983 through the end of February 1984, Henry Hicks, Esq. (an attorney retained by Sullivan), Thomas and Lennon corresponded with and telephoned respondent requesting an accounting and final distribution of the estate. Thereafter, the respondent failed to reply to these inquiries or make a final distribution until April 1984.

Respondent was guilty of communicating with an adverse party, in violation of DR 7-104 (A) (1) of the Code of Professional Responsibility, since Hicks informed respondent in a letter dated November 21, 1983 that he represented the heirs of the estate of Joseph V. Grano, and thereafter, without the knowledge or consent of Hicks, the respondent caused Sullivan, Thomas and Lennon to sign releases for distribution of estate funds in advance of actually distributing said funds.

The respondent was also guilty of conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) of the Code of Professional Responsibility, and failure to obey an order of the Appellate Division, First Department, in violation of DR 7-106 (A), since, during the summer of 1984, Hicks requested that respondent pay the legal fees incurred by the heirs of the estate in obtaining the distribution of the estate funds, as well as the accrued interest for the 2½-year period said funds were under his control, and thereafter, the respondent conditioned the payment of said legal fees and accrued interest upon Hicks' written withdrawal of his complaint to the Committee. The Committee's counsel, in a letter dated July 11, 1984, requested that respondent produce certain documents in connection with the complaint filed by Hicks with the Committee. Respondent thereafter asserted his Fifth Amendment privilege and refused to produce the documents specified in a judicial subpoena duces tecum or answer any questions. The Committee moved to compel production of the documents and on March 21, 1985, this court granted the Committee's motion. The respondent, however, has failed to comply with that order.

With respect to charge No. III, respondent also conceded his guilt. On March 18, 1985, Elizabeth Snee sought legal advice from respondent regarding her duties as executrix of the estate of Mary J. Boentgen, but thereafter the respondent failed to inform Snee that he was suspended from the practice of law by an order of this court. He agreed to probate the will of Mary Boentgen and advise Snee with respect to her duties

as executrix. He obtained a tax waiver on behalf of Snee. Without the knowledge or consent of the partners in the law firm of Glatzer & Belovin, he prepared a notice of probate, a probate petition and affidavits of attesting witnesses for the estate of Mary J. Boentgen, all of which falsely indicated said firm as counsel, and submitted these documents to the Surrogate's Court, New York County. He also prepared two separate affidavits of attesting witnesses for the estate of Mary J. Boentgen in which he represented himself as an attorney-at-law admitted to practice in the State of New York, without revealing that he was suspended from the practice of law. In May 1985, Snee learned that respondent had been suspended from the practice of law and requested that he forthwith return the documents regarding the estate. Thereafter, however, respondent failed to return these documents.

Accordingly, respondent is guilty of conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of DR 1-102 (A) (4) of the Code of Professional Responsibility; conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) of the Code of Professional Responsibility; and failing to obey an order of suspension, in violation of DR 7-106 (A) of the Code of Professional Responsibility; Judiciary Law § 486 and 22 NYCRR 603.13.

Respondent's attempt to mitigate his admitted conversion of clients' moneys, by claiming he used those funds to pay drug dealers who had threatened his son's life, is unpersuasive. Presumptively, an attorney who misappropriates clients' or third-parties' funds cannot be permitted to remain a member of the Bar. This result is mandated by the court's duty to protect the public and vindicate the public's trust in lawyers as custodians of clients' funds (see, Matter of Marks, 72 AD2d 399, 401; see also, Matter of Levine, 101 AD2d 49; Matter of Pressment, 118 AD2d 270). Absent extremely unusual circumstances, which are not present herein, personal problems such as respondent's alleged diversion of funds to pay drug dealers cannot serve to mitigate the disciplinary consequences of a conversion (see, Matter of Pinello, 100 AD2d 64).

Consequently, the motion by the Departmental Disciplinary Committee, for an order confirming the Hearing Panel's findings of fact and conclusions of law and disbarring the respondent, Warren J. Black, from the practice of law, should be granted and respondent's name ordered stricken from the roll of attorneys in the State of New York.

KUPFERMAN, J. P., SANDLER, ASCH, ROSENBERGER and ELLE-RIN, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York effective May 4, 1987.