[741 NYS2d 526]

In the Matter of MARK I. ADELMAN (Admitted as MARK IAN ADELMAN), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 9, 2002

**APPEARANCES OF COUNSEL**

*Eileen J. Shields* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Mark I Adelman*, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to the practice of law in New York by the First Judicial Department on October 30, 1995 as Mark Ian Adelman. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

By order dated December 16, 1999 (*Matter of Adelman*, 263 AD2d 160), this Court suspended respondent on an interim basis pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv), pending disposition of disciplinary proceedings, based upon uncontested evidence of respondent's professional misconduct immediately threatening the public interest and his failure or refusal to pay money owed a client which debt was demonstrated by a judgment.

On May 4, 2000, respondent was served with a Notice and Statement of Charges alleging 15 counts of disciplinary violations. The charges alleged that respondent converted client funds held in escrow, engaged in schemes to defraud, failed to pay a client's judgment and failed to maintain escrow records. Respondent submitted an answer in which he admitted some of the misconduct. On September 27, 2000, respondent entered into a prehearing stipulation in which he admitted to nearly all the facts relevant to the charges. On September 27th and 28th, the hearing was held before the Referee at which the Departmental Disciplinary Committee called no witnesses. Respondent testified on his own behalf and called one witness in mitigation. On the record, the Referee sustained 13 out of 15 charges.

On November 27, 2000, respondent was served with a Notice of Supplemental Charges based upon his engaging in additional misconduct while he was suspended. In his answer, respondent admitted to the facts but denied that he violated any disciplinary rules. A second hearing was held on January 24, 2001, at which the Committee called two witnesses. The Referee found respondent guilty of the supplemental charges and, in a report dated April 16, 2001, recommended that respondent be disbarred. A Hearing Panel heard oral argument on May 23, 2001 and, in a report dated June 29, 2001, concurred with the Referee's recommendation of disbarment.

The Committee now seeks an order confirming the Referee's findings of fact and conclusions of law and the Hearing Panel's

recommendation, and adopting both their recommendations that respondent be disbarred. The Committee also seeks an order directing respondent to make monetary restitution to the Lawyers' Fund for Client Protection for any payments the Fund has or will award in connection with his misconduct, and to provide that this Court's order may be entered as a civil judgment against respondent.

The undisputed facts are that, in 1997, respondent began converting funds from his escrow account which were being held for various clients whom he had represented in several real estate transactions. Over the course of one year, respondent had intentionally converted $55,800 in down payments for his own personal use. Respondent stipulated that when he took the money, he knew it was wrong and that he would have to pay it back. Respondent was found guilty of four counts of intentional conversion in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3) and five counts of failure to maintain funds belonging to another person incident to his practice in violation of DR 9-102 (b) (22 NYCRR 1200.46).

Respondent was also found to have engaged in two unrelated schemes to defraud. In the first, on three separate dates in 1997-1998, respondent deposited three personal checks, ranging from $2,500 to $5,000, into his escrow account. The checks were drawn on his personal checking account at another bank that he knew had no funds. The next day, before the check could clear, he wrote an escrow account check to himself in the same amount and cashed it. By doing so, respondent was found to have engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4).

The second scheme involved his client, Ms. Joslin, whom respondent obtained money from in December 1997 to January 1998, by falsely asserting that he had made payments totaling $3,300 to two credit card companies on her behalf as settlement of her outstanding balances. Respondent received two checks from Ms. Joslin as reimbursement for his alleged payments after he showed her copies of his checks and a cover letter he said he had sent to the credit card company. After learning of the scheme, Ms. Joslin instituted a small claims action against respondent to recoup the amount he converted to his own use. On November 18, 1998, a so-ordered settlement stipulation was entered into between them which required respondent to pay Ms. Joslin $3,900 in monthly installments of $650. As of September 27, 2000, the first day of the Referee's hear-

ing, respondent, despite the court order, had only repaid Ms. Joslin $1,350.

The Referee sustained Charge Eleven, finding that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4), and Charge Fourteen, finding that respondent engaged in conduct prejudicial to the administration of justice in violation of DR 1-102 (a) (5) for failing to pay his client's judgment. Charges Twelve and Thirteen which alleged that he had created false documents and given false testimony to the Committee were dismissed. The Referee also sustained Charge Fifteen which alleged that respondent failed to maintain the required bookkeeping records of his escrow account in violation of DR 9-102 (d).

Following the second hearing on the supplemental charges, the Referee found respondent guilty of all three charges. Although respondent had been suspended in December 1999, the Referee found that respondent had practiced law in August-September 2000 (shortly before the Referee's hearing) by representing a former client against her ex-husband for failing to make his court ordered support payments. Respondent violated DR 1-102 (a) (4) and (5) because he held himself out as an attorney in good standing and practiced law in violation of this Court's suspension order. Respondent had used his letterhead to communicate with opposing counsel and had not informed him that he was suspended.

The third charge involved respondent's issuance of a fraudulent check on June 2, 2000. After identifying himself as a lawyer purchasing an office gift, respondent intentionally drafted a check on a closed account in the amount of $134.23 to pay for the gift. The store owner notified respondent that the check was returned unpaid and respondent, on numerous occasions, promised he would repay the money. Respondent was found to have violated DR 1-102 (a) (4). Although respondent finally paid this sum, he did so only after the second disciplinary hearing.

At the first hearing, respondent called one witness on the issue of mitigation, his treating psychotherapist, who is also an expert in the treatment of problem gambling, and is the director of a treatment program called Gampro. He testified that respondent suffers from pathological gambling which is a mental illness defined as an "impulse control disorder"; that respondent was 44 years old and had been gambling since he was 15 years old; that respondent had been participating for over a year in a therapy program designed for treatment of this disor-

der and that if he continued treatment and attendance at Gamblers' Anonymous (which he had done irregularly), he had a fairly good prognosis for not surrendering again to compulsive gambling. The psychotherapist also stated that in his experience gamblers relapse more often than drug addicts or alcoholics and, since his program relies on self-reporting, there is no independent way to monitor the gambler to make sure he is telling the truth about not gambling. However, after approximately five years of therapy and counseling, a person should be permitted to handle money again. He further testified that when respondent spent his clients' funds, he behaved like a typical gambler who deliberately plans where he will get the money to continue gambling but is not concerned about the result of his actions or who will be harmed. Finally, as to causation, he testified that respondent's misconduct was not entirely due to his gambling problem, but that it was "an element" and "contributed strongly" to his actions.

The Committee recommended disbarment based upon respondent's intentional conversion of funds and his failure to establish a causal connection between his gambling and his misconduct. Respondent analogized his serious gambling problem to alcoholism and drug abuse to which courts have tended to be more understanding provided the addict establishes a causal connection between the misconduct and the addiction (see Matter of Sorote, 196 AD2d 339; Matter of McEnroe, 174 AD2d 67). Respondent further argued that his addiction caused his misconduct and constituted the "unusual mitigation" required by this Court to avoid disbarment. He also cited to, inter alia, his restitution of the money he had taken, requested a two-year suspension nunc pro tunc to December 16, 1999, the date of his interim suspension, and proposed that an attorney be appointed to monitor his conduct and his handling of escrow money.

As to mitigation, the Referee referred to respondent's cooperation with the Committee and his lack of a prior disciplinary history since his admission in 1995. In aggravation, the Referee cited respondent's failure to make restitution to Ms. Joslin even though a considerable period of time had elapsed between his suspension and the close of the hearings, and the sum was relatively modest (approximately $3,000). Respondent also delayed paying the store owner until after the supplemental hearing and respondent continued to engage in professional misconduct during the pendency of these proceedings, while he was not gambling and in treatment.

As to sanction, the Referee noted that where an attorney intentionally misappropriates client funds, this Court has found him presumptively unfit to practice law absent "extremely unusual mitigating circumstances" (*Matter of Neufeld*, 268 AD2d 1, 3). The Referee concluded:

> "While respondent certainly appears to be earnestly trying to overcome his gambling problem, I find that respondent has not met his burden of persuasion on either of two critical points: 1) that the psychological pattern he has engaged in his whole adult life has been altered, or 2) that he does not pose a risk to the public."

Finding that this was not a case where a lawyer guilty of misconduct due to pathological gambling should be given a second chance, the Referee relied on: respondent's failure to repay either of his clients from whom he had stolen money without presenting any excuse; the fact that respondent had gambled throughout his short legal career and, therefore, his conduct cannot be termed an aberration; respondent's failure to present any character witnesses to rebut the inferences of "severe character flaws which flow from repeated thefts, frauds and conversions to which he admitted"; and respondent's failure to present any evidence of community service or other such activities. "In sum, other than his good intentions (which I have no reason to question), there is nothing concrete to demonstrate that respondent has sufficiently changed to give me comfort that he does not pose a risk of future misconduct."

During oral argument, counsel for the Committee urged the Hearing Panel to confirm the Referee's recommendation and respondent again argued for a two-year suspension dating back to his interim suspension, restitution, continued treatment and abstinence from gambling, and monitoring or supervision of his law practice by an individual or group. The Panel disagreed with respondent's assertion that suspension was justified since he repaid the money stolen from his clients inasmuch as repayment of converted funds is not a defense and found that respondent's failure to repay the Lawyers' Fund for Client Protection for its payment to Ms. Joslin "indicat[es] that he has not made any progress toward acting appropriately." Relying on the hearing testimony, the Panel found "most damaging" to respondent was the fact that his condition was not entirely the cause of his misconduct, thus the causal nexus possibly warranting the lesser sanction of suspension was broken.

The Panel concluded:

> "Respondent was aware of the gambling and made deliberate plans to get the necessary funds. He had no cognitive deficits resulting from the condition and was in no way inhibited from keeping the required records pertaining to his dealings, including the proper paperwork with regard to his escrow account. Additionally, Respondent's condition fuels the need to obtain money at any cost, without any concern for the people from whom the money is taken."

The Panel found "disturbing" respondent's additional two infractions he engaged in after he had been suspended and was under investigation, noting that they were significant since they were committed for reasons unrelated to his gambling problem. Although addiction can be considered in mitigation of a sanction, the Panel maintained that it should not be used as an excuse for misconduct. Consequently, based upon the absence of any other mitigating factors, respondent's continuation to "willingly engage in deception," and his pattern of fraud and deception during a substantial part of his brief career at the bar, the Panel recommended respondent's disbarment.

The Committee now moves for an order confirming the Referee's and Hearing Panel's determinations, including their recommendation of disbarment; directing respondent to make monetary restitution to the Lawyers' Fund for Client Protection for any awards made in connection with his misconduct, including but not limited to the Joslin payment (Judiciary Law § 90 [6-a] [a]); and providing that our order may be entered as a civil judgment against respondent. The Committee notes that this Court has twice disbarred attorneys who argued that their gambling problem caused their misconduct (*Matter of Miller*, 86 AD2d 344; *Matter of Salinger*, 88 AD2d 133; *compare*, *Matter of Paglia*, 268 AD2d 72). While these cases predate the recognition of pathological gambling as a mental disorder that is treatable, the Committee argues that the causal nexus between respondent's intentional conversion of funds and his disorder are absent and, therefore, disbarment is appropriate (see, *Matter of Grubart*, 164 AD2d 144, *lv denied* 77 NY2d 803 [where no causal link between health problems and pattern of fraudulent conduct including conversion resulted in disbarment]; *Matter of Neufeld*, *supra*, [respondent's conversions not caused by wife's and son's psychiatric and physical needs]).

In his answer, respondent, who appears pro se, does not dispute any statements made in the petition but asks this

Court to consider the same mitigating factors he raised in his Memorandum of Sanction before the Referee. Respondent also apologizes to "anyone hurt in any way by his actions"; avers that he is ashamed and sorry for his actions which were directly related to his pathological gambling disorder either by direct gambling or by covering a gambling debt; and realizes that his initial proposed sanction was too lenient in light of the severity of his actions, but still requests a less severe sanction than disbarment since he is a person "who can be rehabilitated and might sometime in the future be worthy of reinstatement."

In view of the uncontested evidence that respondent intentionally converted escrow funds and engaged in fraudulent conduct by drafting checks and practicing law while under suspension, the charges were properly sustained by the Referee and Hearing Panel and such findings are confirmed.

As to an appropriate penalty, we adopt the Referee's and Hearing Panel's recommendation of disbarment. While this is clearly a sad story of a young attorney who has no disciplinary history, who has cooperated with the Committee and who suffers from a compulsive mental disorder, this Court has, with rare exceptions (*see e.g., Matter of Bargman*, 264 AD2d 140; *Matter of Munzer*, 261 AD2d 87), consistently imposed disbarment where an attorney has converted the escrow funds of a client or third party (*Matter of Pinello*, 100 AD2d 64, *appeal dismissed* 62 NY2d 940). Although respondent argues that his gambling addiction constitutes "extremely unusual circumstances," this Court has previously rejected such a justification, even in mitigation, for such wrongful behavior and we reject it in this case particularly where his actions could not be considered an aberration. Finally, as the Hearing Panel found, "most damaging" is the fact that respondent's fraudulent conduct, albeit not his conversion of escrow funds, continued after he began treatment for his gambling, thereby breaking any causal connection that could have been found between his disorder and making him unfit for the practice of law.

With regard to the Committee's request for an order directing respondent to make restitution to the Lawyers' Fund for Client Protection for "any awards" made in connection with respondent's misconduct, including but not limited to the Joslin payment, such request is denied with leave to renew.

Pursuant to Judiciary Law § 90 (6-a), when an attorney is disbarred based upon his willful misappropriation of money or property, this Court may require him to make monetary restitution in accordance with that subdivision and require

that he reimburse the Lawyers' Fund "for awards made to the person whose money or property was wilfully misappropriated or misapplied." Pursuant to paragraph (b) of section 90 (6-a), monetary restitution "shall be made to the person whose money or property was wilfully misappropriated * * * and shall be for the amount or value of such money or property, as found in the disciplinary proceedings" (see, Matter of Hirsch, 226 AD2d 41, 43 [exact sum ordered to be paid to client]; see also Matter of Feely, 241 AD2d 174). In Matter of Blutrich (253 AD2d 85, 88), this Court rejected the Committee's request directing restitution to a named insurance company "or other victims of [r]espondent's misappropriations of money," finding their request not sufficiently specific as to the victims of the misappropriation or the amount misappropriated.

That part of the Committee's request that is open-ended as to unknown future awards that may be made to unidentified victims is similarly not specific enough to direct restitution. Moreover, as to Ms. Joslin, while we know that the Lawyers' Fund reimbursed her the sum which respondent failed to repay, the Committee has failed to set forth or provide documentation as to the exact amount of money awarded from the Fund to Ms. Joslin.

Finally, as to the Committee's request that this Court "provide that the order may be entered as a civil judgment against respondent," such direction is unnecessary where Judiciary Law § 90 (6-a) (d) already provides for such relief.

Accordingly, the petition should be granted to the extent of confirming the Referee's findings of fact and conclusions of law and the Hearing Panel's recommendation to disbar respondent and strike his name from the roll of attorneys and counselors at law. That portion of the Committee's motion seeking an order directing respondent to make restitution to the Lawyers' Fund for Client Protection, pursuant to Judiciary Law § 90 (6-a) and to provide that this Court's order may be entered as a civil judgment against respondent is denied, with leave to renew that portion seeking restitution upon documentation of the exact amount due to said Fund.

TOM, J.P., ANDRIAS, BUCKLEY, ROSENBERGER and ELLERIN, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof. Petition otherwise denied, as indicated.