[940 NYS2d 46]

In the Matter of Jonathan S. Bristol (Admitted as Jonathan Starr Bristol), an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, March 6, 2012

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Jonathan S. Bristol*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Jonathan S. Bristol was admitted to the practice of law in the State of New York by the First Judicial Department on January 14, 1991.

On May 2, 2011, respondent pleaded guilty, in the United States District Court for the Southern District of New York, to conspiracy to commit money laundering (18 USC § 371; 18 USC § 1956 [a] [1] [A] [i]; [B] [i]), stemming from his allowing his client, former investment advisor Kenneth I. Starr, to use respondent's escrow accounts in furtherance of Starr's illegal use of investor funds, by wiring illegally-obtained funds into and out of those accounts. Based on that conviction, the Departmental Disciplinary Committee now moves pursuant to Judiciary Law § 90 (4) (a) and (b) for an order striking respondent's name from the roll of attorneys, on the ground that the federal felony of which he was convicted would constitute a felony in this state and therefore warrants his automatic disbarment; in the alternative, the Committee seeks an order holding that the federal felony constitutes a "serious crime" under Judiciary Law § 90 (4) (d), and referring the matter for a sanction hearing. In addition, the Committee seeks a restitution order pursuant to Judiciary Law § 90 (6-a).

In response to the motion, respondent has submitted his affidavit of resignation dated August 27, 2011. Accordingly, in a

further submission, the Committee clarifies that it continues to seek respondent's automatic disbarment under Judiciary Law § 90 (4) on the ground that the federal felony of which he was convicted is essentially similar to a New York felony, which automatic disbarment would render respondent's resignation moot. However, if, instead, this Court determines that the automatic disbarment provision of Judiciary Law § 90 (4) (e) does not apply to respondent's federal conviction, and that instead the federal felony must be deemed to constitute a serious crime as defined in Judiciary Law § 90 (4) (d), the Committee seeks in the alternative that respondent's affidavit of resignation be accepted and respondent's name be stricken from the roll of attorneys as of the date the resignation was signed.

A conviction of a federal felony does not trigger automatic disbarment, no matter how serious the felony, unless that federal felony would constitute a felony under the New York Penal Law (Judiciary Law § 90 [4] [e]; *Matter of Rosenthal,* 64 AD3d 16, 18 [2009]).

This Court has previously held that when the language of New York's money laundering offense, Penal Law § 470.10, is compared to the federal money laundering statute, our State statute is too dissimilar to the federal offense of which respondent was convicted to permit automatic disbarment under Judiciary Law § 90 (4) (e) (*see Matter of Stern,* 205 AD2d 162, 163 [1994]). While both the federal and the New York statute require that the defendant engage in financial transactions designed to conceal that funds were derived from criminal conduct, the New York statute requires that the defendant had the intent to conceal or disguise the source of the proceeds—"a different mental state, with a more significant level of culpability" (*id.*).

Nevertheless, the Committee suggests that admissions made by respondent during his federal plea allocution establish that the federal conviction is analogous to the New York State felony of scheme to defraud in the first degree (Penal Law § 190.65 [1] [b]), which applies where a defendant "engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises." We reject this contention.

The Committee relies on an admission by respondent that he knew that a substantial portion of the funds being wired by Starr were the proceeds of unlawful activity, and knew that allowing Starr to do so was illegal, and another more specific

admission that he allowed Starr to transfer into the account $1 million stolen from a talent agency executive, and at Starr's direction respondent himself transferred the same amount from the account to the bank account of a certain actress. However, these statements fail to establish that respondent admitted acting with the intent to defraud Starr's investors. Scheme to defraud in the first degree, as defined by Penal Law § 190.65, requires an intent to defraud on the part of the offending party, as opposed to merely facilitating fraudulent conduct by a third party (*see Matter of Stern, supra*).

This Court has repeatedly deemed federal convictions for money laundering to constitute "serious crimes" under Judiciary Law § 90 (4) (d) (*see e.g. Matter of Flores*, 23 AD3d 79 [2005]; *Matter of Hirschl*, 280 AD2d 172 [2001]; *Matter of Lee*, 235 AD2d 110 [1997]; *Matter of Stern, supra*). However, the necessary procedure following such a determination is a hearing on the proper sanction, and no such hearing could be held until a final judgment of conviction is entered (*see Matter of Kramer*, 69 AD3d 139 [2009]). Under such circumstances, in lieu of undertaking the protracted and time-consuming additional tasks necessary to determining whether disbarment is appropriate, where respondents have submitted their resignations, this Court has simply accepted the respondents' resignations (*see Matter of Flores*, 47 AD3d 335 [2007]; *Matter of Weinig*, 220 AD2d 184 [1996]).

Respondent's tendered affidavit of resignation here complies with 22 NYCRR 603.11. It states that his resignation is submitted freely, voluntarily and without coercion or duress, that he is aware of the implications of submitting his resignation, and is aware of this pending disciplinary proceeding, and he could not successfully defend himself on the merits against allegations that he engaged in egregious professional misconduct (*see* 22 NYCRR 603.11 [a] [1]-[3]). It specifically acknowledges that he agreed to allow Starr to wire approximately $19 million in funds into his escrow accounts, which respondent then wired out at Starr's direction, in order to facilitate Starr's fraudulent scheme to disguise the nature, location, source, ownership and control of funds that he stole from his clients, with knowledge that a substantial portion of the funds were the proceeds of illegal activity.

Acceptance of respondent's resignation now will expeditiously remove respondent from the roll of attorneys and dispense with the need for undertaking the protracted process that a serious

crime hearing would entail, and, as in *Matter of Flores* (47 AD3d 335 [2007], *supra*) and *Matter of Weinig* (220 AD2d 184 [1996], *supra*), is the better procedure here.

We deny the branch of the Committee's motion seeking an order pursuant to Judiciary Law § 90 (6-a), requiring respondent to make restitution to any victims of his misappropriations of money. This request is not sufficiently specific as to the victims or the amounts subject to restitution (*see Matter of Yagman*, 61 AD3d 30 [2009]; *Matter of Adelman*, 293 AD2d 62 [2002]; *Matter of Blutrich*, 253 AD2d 85 [1999]).

Accordingly, the Committee's motion should be granted to the extent of accepting respondent's affidavit of resignation from the practice of law, and his name stricken from the roll of attorneys, effective nunc pro tunc to August 27, 2011, and otherwise denied.

SAXE, J.P., FRIEDMAN, ACOSTA, DEGRASSE and ABDUS-SALAAM, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc to August 27, 2011, and petition otherwise denied.