In the Matter of Arthur Levine, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 17, 1984

**APPEARANCES OF COUNSEL**

*Michael A. Gentile* for petitioner.

*Arthur Levine,* respondent *pro se.*

**OPINION OF THE COURT**

*Per Curiam.*

Petitioner seeks confirmation of a hearing panel's findings of fact and conclusions of law, dated October 12, 1983, and its recommendation therein that respondent be disbarred. Respondent was admitted to practice in this State before the Second Judicial Department on June 26, 1935. During the period relevant to these proceedings, he maintained an office for the practice of law within the First Judicial Department.

In 1966, respondent was appointed successor committee of the person and property of Joseph Collazo, an incompetent whose sole source of income consisted of monthly checks from the Veterans' Administration. These checks were deposited into a savings and a checking account maintained by respondent for the benefit of the incompetent; respondent was the sole signatory on these accounts. During respondent's tenure as committee for the incompetent, from February, 1966 to May, 1977, respondent converted approximately $20,000 of these funds to his own use. This misappropriation of funds came to light as a

result of respondent's failure to file required annual accountings with the Office of the New York County Clerk and the Administrator of Veterans' Affairs, for the periods ending February 25 of 1974, 1975, 1976 and 1977. After his removal as committee in May, 1977, respondent further neglected to comply with an order directing him to file a final accounting within 30 days.

Respondent acknowledges these acts of misconduct, but explains that they occurred during a period when he was suffering from severe physical and mental health problems. During this period he was so heavily under the influence of a prescribed drug that his mental condition and capacity were adversely affected to the extent that he "did not know or fully realize the nature and consequences" of his misconduct. Respondent offers this explanation, his heretofore unblemished record over nearly 49 years of practice, and his continuing efforts to make restitution (totaling $7,650 as of December 21, 1983) in mitigation of the charges. Such restitution has been to the surety company which made good the loss to the incompetent.

This department has consistently taken a stern view of attorneys who convert the escrow funds of their clients or third parties, imposing the penalty of disbarment for such misconduct as a violation of DR 1-102 (A) (4) of the Code of Professional Responsibility (*Matter of Bell,* 98 AD2d 351; *Matter of Hodes,* 97 AD2d 308; *Matter of Hampares,* 89 AD2d 428; *Matter of Nadel,* 85 AD2d 8, mot to dismiss app granted 57 NY2d 773; *Matter of Field,* 79 AD2d 198, app dsmd 54 NY2d 1024; *Matter of Stults,* 77 AD2d 254, mot for lv to app den 53 NY2d 606; *Matter of Wolf,* 73 AD2d 419; *Matter of Marks,* 72 AD2d 399).

An intention to make reparation is, in and of itself, insufficient to remove the taint of such prior calculated actions of misconduct (*Matter of Field, supra*). Further, any averment that mental capacity or responsibility was adversely affected by illness or medical treatment must be causally established before it can serve as an excuse for an attorney's conversion of funds (*Matter of Wolf, supra*). In dealing with these matters, we have been guided by our language four years ago in *Matter of Marks* (*supra,* p 401): "Presumptively, an attorney who misappropriates a cli-

ent's funds cannot be permitted to remain a member of the Bar. This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds."

This remains our guiding principle in dealing with such cases. This is not to say, however, that evidentially established circumstances will not be considered in mitigation. We will recognize the disabling effects of mental or physical incapacitation on the faculties necessary to practice law (*Matter of Cohen*, 92 AD2d 139). We will also recognize a long and unblemished record of practice before the Bar as a mitigating factor, provided that the party injured by the attorney's misconduct has been made whole. In *Matter of Einhorn* (88 AD2d 95), the attorney had had an otherwise unblemished record of practice for more than 50 years, and had acted out of frustration in invading the escrow of his client in order to recover the balance of his fee (but cf. *Matter of Hodes, supra*). We took note of the fact that the attorney had kept the invaded funds intact and identifiable, and had notified his coescrowee of his actions in writing. Still, viewing this as a serious act of misconduct, we censured the attorney on condition of full restitution within 30 days, failure to do so resulting in disbarment.

The respondent before this court, now in his seventies and suffering from a debilitating heart condition, has failed to establish that his acts of misconduct for a period of at least four years were the *result* of his physical or mental infirmity. He urges upon this court that he has insufficient funds to prepare a proper legal defense or even to obtain the testimony of a medical expert in furtherance of his suggestion of mitigation by reason of drug treatment for his heart condition. With regard to his continuing efforts at restitution, respondent devotes fully half of the affidavit in support of his answer to his expectation of a substantial fee in a German estate matter. The amount and date of this payment are sheer speculation, and this court cannot be expected to gamble on respondent's future earnings in demanding restitution at the earliest possible time. We recognize the reality that respondent, in his present condition of age and health as well as his already dire financial

straits, will be deprived of the means of earning his livelihood as he has earned it for the last 49 years should he be disbarred. He makes about $10,000 per year now. However, it does not appear that respondent's declared entitlement to a fee from this estate matter will require any more legal work on his part. Nonetheless, the disciplinary function of this court cannot be held hostage to respondent's future financial expectations. The gravity of respondent's misconduct mandates a stern measure of punishment.

Accordingly, the petition to confirm the hearing panel's findings of fact and conclusions of law should be granted, respondent should be disbarred, and his name stricken from the roll of attorneys authorized to practice law in this State.

MURPHY, P. J., KUPFERMAN, CARRO, ASCH and FEIN, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors at law in the State of New York, effective May 17, 1984.