In the Matter of STANLEY PRESSMENT, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 17, 1986

## APPEARANCES OF COUNSEL

*Robert P. Walsh* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*James W. Farrell* for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was admitted to practice in the Second Judicial Department on March 30, 1960, and has maintained an office for the practice of law within this Department during all of the applicable times herein. Respondent was charged with professional misconduct in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6) and DR 9-102 (B) (4).

The Departmental Disciplinary Committee has moved to confirm the findings of fact and conclusions of law of the Hearing Panel, which also recommended disbarment. Respondent cross-moves to amend the petitioner's findings of fact and to disaffirm the conclusions of law.

Respondent was retained on or about April 21, 1980 by Blanche Silverman, executrix of the estate of Lawrence J. Silverman, to represent her husband's estate. Respondent arranged in that capacity for the closing of a sale of stock owned by the decedent. The terms of that sale provided that $100,000 would be delivered to the estate at closing and the balance of $400,000 would be paid on a monthly basis over a five-year period with 6% interest. Respondent agreed to act as escrow agent for the monthly payments of approximately $7,700, 90% of which he was to remit monthly to Blanche Silverman and 10% of which he was to remit monthly to decedent's adopted daughter, Yvette Flowers. The initial $100,000 was remitted to Silverman and Flowers and from November 1980 up to and including September 1981, respondent, as escrow agent, received approximately $7,700 per month under the sale agreement and remitted to Silverman $6,959.81 and the balance of $773.32 to Flowers on a monthly basis.

In or about October 1981, the respondent, as escrow agent, received the $7,700 representing the October 1981 payment, and on October 9, 1981, he remitted to Blanche Silverman a check in the amount of $6,959.81 representing her monthly share of the close-out agreement. This check was drawn on respondent's escrow account and was deposited by Blanche Silverman in her account at the Jamaica Savings Bank in Rockaway Park, Queens. On or about October 29, 1981, the Jamaica Savings Bank advised her in writing that the check had been returned for "insufficient funds". In or about October 1981, the respondent, without Mrs. Silverman's knowledge or consent, had taken her share of the monthly proceeds,

$6,959.81, and used the funds for his personal obligations. This was the reason the October 9, 1981 check was returned for insufficient funds. On November 9, 1981, the respondent issued to Blanche Silverman a check drawn on his escrow account in the amount of $6,959.81, purportedly to replace the dishonored check of October 9, 1981. However, this check also was returned by the bank for insufficient funds. The October 1981 payment due to Yvette Flowers was made by respondent.

Thus, the Hearing Panel concluded that respondent was guilty of professional misconduct and conduct prejudicial to the administration of justice as an attorney and counselor-at-law, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6) and DR 9-102 (B) (4), in that he converted to his own use funds which belonged to a client and which he received in a fiduciary capacity for that client, and recommended that respondent be disbarred.

In response, at the hearing and in opposition to this motion, respondent notes that in over 20 years of practicing law, principally as a tax attorney, he had never acted as an escrow agent until the transactions herein. He also notes that he had offered to remove himself as escrow agent so that these payments could be made directly to the bank account of Blanche Silverman, but this offer was rejected by the corporate obligor. Respondent notes that he has had recurring problems attempting to collect his fee for services performed both for the estate and Blanche Silverman personally, that he had words with her prior to October 1981 with respect to her delay in sending the fee for substantial work he had performed for her personally which was not contemplated by a retainer agreement, and advised her that he might be forced to take precipitous action. Thus, he asserts that without her consent and consistent with his earlier admonition to her, he took her share of the monthly proceeds in October of 1981, $6,959.81, and used the funds for his personal obligations. This, he notes, was the reason that the check to her was returned for insufficient funds. He also admits that another check drawn November 9, 1981 by him to her, intended to replace the October 9, 1981 check, was similarly returned for insufficient funds. Respondent also notes that during this period that he drew the check and the replacement check, he was under severe emotional stress rooted in a matrimonial dispute involving visitation rights connected with minor children and the recurring serious illness of his father. He also was seeing psychiatrists regularly for treatment of his emo-

tional disorders stemming from these problems. He further testified that he performed legal services for a period of nine months after October 1981 on behalf of Blanche Silverman personally, and the estate. In addition, respondent said he attempted to repay the money which he converted by paying monthly installments of $200, since his financial condition would not permit a lump-sum payment, but this offer was rejected by Blanche Silverman.

Respondent asserts in his opposition and in his cross motion to amend the findings of fact and disaffirm the conclusions of law that his actions as escrow agent and attorney were wrong, but does not concede that the intention behind his action was dishonest, fraudulent or deceitful since he was acting "under severe stress and pressure both emotionally and financially at the time". He also notes that he had the intention of rectifying the situation by, as noted, attempting to pay Blanche Silverman back in installments and continuing to work for her and the estate for a period of nine months after the conversion. He also asserts in effect he was acting as a creditor because of the money owed by Mrs. Silverman for his legal services.

However, respondent received $6,959.81 of funds belonging to Mrs. Blanche Silverman in his fiduciary capacity as escrowee. He did not remit those funds to Mrs. Silverman but rather applied them toward his own personal obligations. Simply put, that is conversion. The remaining facts urged by respondent simply go to mitigation. Even assuming that Mrs. Silverman owed respondent legal fees which amounted to more than the amount of the money in the escrow account, respondent should still have followed the established civil course available to him instead of engaging in self-help. In addition, respondent's claim that he acted in a forthright manner is belied by the fact that he sent a check to Mrs. Silverman for the amount while he knew there was not enough money to cover that check in the escrow account. This was also true of the replacement check he sent in November.

As we noted in *Matter of Marks* (72 AD2d 399, 401): "Presumptively, an attorney who misappropriates a client's funds cannot be permitted to remain a member of the Bar. This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds." Cases since then have repeatedly adhered to this holding, although we have noted "we do not

always disbar when an attorney is guilty of conversion of client's funds *(see, e.g., Matter of Einhorn,* 88 AD2d 95), but have taken mitigating circumstances into consideration" *(Matter of Walker,* 113 AD2d 254, 257). However, in the *Walker* case, respondent was disbarred. In *Matter of Einhorn (supra),* respondent attorney was 75 or 76, had acted out of frustration because of a client's failure to pay his legal fee. Mr. Einhorn had kept the withdrawn funds intact and identifiable, a fact not similar to the instant matter. There, the respondent attorney had an undisputed claim to the money for legal fees, had submitted a bill, and been paid half the amount of the bill. He diverted the rest on full notice to interested parties, even sending a letter to the coescrowee contemporaneously, advising that he had withdrawn the funds. As noted here, respondent sent Mrs. Silverman a check drawn on the escrow account and, when it was returned for insufficient funds, sent her a replacement check for the same amount drawn on the same escrow account. Unlike *Einhorn,* there was no notice, contemporaneous or subsequent, of the withdrawal of the funds. There was no previous bill or documentation to evidence the supposed entitlement and there was no maintenance of the funds intact or identifiable. Accordingly, there is nothing in the instant case to rebut, mitigate or otherwise alter our consistently imposed sanction of disbarment.

Accordingly, the cross motion by respondent to amend the petitioner's findings of fact and to disaffirm the conclusions of law should be denied, and the motion by petitioner Departmental Disciplinary Committee, for an order confirming the findings of fact and conclusions of law of the Hearing Panel with its recommendation of disbarment, should be granted and respondent's name should be ordered stricken from the roll of attorneys in the State of New York.

Ross, J. P., Asch, Fein, Milonas and Ellerin, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York effective August 18, 1986.