In the Matter of THEODORE L. MALATESTA (Admitted as THEODORE MALATESTA), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 5, 1987

## APPEARANCES OF COUNSEL

*Patricia Smillie-Scavelli* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Jeremiah S. Gutman* of counsel *(Gail A. Wechsler* with him on the brief; *Levy, Gutman, Goldberg & Kaplan* and *Albert Felix,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Theodore L. Malatesta was admitted to practice as an attorney and counselor-at-law by this court on June 20, 1960. At all times relevant, he has maintained an office for the practice of law in this judicial department.

Petitioner Departmental Disciplinary Committee moves for an order confirming the findings of fact and conclusions of law of a Hearing Panel, which also recommended disbarment.

On April 19, 1982, respondent, who had been retained to represent Gloria Sparber in the sale of a cooperative apartment, agreed in writing to hold in escrow a check for $4,200. The check was received as a down payment on the apartment from prospective purchasers, William and Marilyn Cassin, pending approval of the Cassins by the board of directors of the cooperative corporation. On April 19 and 22, 1982, without notifying the Cassins, respondent issued two checks, totaling $1,000, to Sparber, drawn on the escrow account in which he had deposited the Cassin funds. Each of the checks bore on their face the notation "adv. co-op." Thereafter, he converted the bulk of the funds to his own use. He apparently replaced the funds, and on June 8, 1982 repaid the Cassins.

On February 16, 1982, Sparber retained respondent to handle a personal injury action. In September 1982, the insurer for one of the defendants made an offer of settlement in the amount of $6,000. Respondent accepted the offer, signed Sparber's name, without indicating that he was doing so, to a general release running to both defendants, and notarized the signature himself. Upon receipt of the check made payable to both respondent and Sparber, respondent indorsed the check in their respective names, again without indicating that he was signing for her, and deposited it on October 5, 1982 into his escrow account. The balance in the account diminished until the account was overdrawn. On December 9, 1982, Sparber demanded her share of the settlement proceeds, and

respondent repaid her with a check drawn on his personal account.

In February and March 1982, respondent deposited into his escrow account two checks, one in settlement of a personal insurance claim and another in settlement of his own injury claim. He had acted as his own attorney in both matters.

The Hearing Panel found petitioner guilty of misconduct involving dishonesty, fraud, deceit, and misrepresentation in violation of Code of Professional Responsibility, DR 1-102 (A) (4); conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5); conduct that adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6); failing to preserve the identity of funds and property of clients in violation of DR 9-102 (A) and 22 NYCRR 603.15 (a); and improper use of notarial powers in violation of Executive Law §§ 135 and 135-a, and determined to refer the matter to this court with the recommendation that respondent be disbarred. One member of the Panel would have recommended a lesser sanction, such as a three-year suspension, in view of the evidence offered in mitigation.

Absent extremely unusual mitigating circumstances, this court has consistently viewed conversion of funds belonging to a client or third party as grave misconduct warranting the severe penalty of disbarment. *(Matter of Walker,* 113 AD2d 254, 257 [1st Dept 1985]; *Matter of Levine,* 101 AD2d 49, 50-51 [1st Dept 1984]; *Matter of Pinello,* 100 AD2d 64 [1st Dept 1984].) An attorney who misappropriates funds is presumptively unfit to practice law. *(Matter of Pressment,* 118 AD2d 270 [1st Dept 1986], citing *Matter of Marks,* 72 AD2d 399, 401 [1st Dept 1980].)

The record contains ample evidence to support the charges. It was sharply disputed whether Sparber consented to the portion of the handwritten notation included on the copy of the retainer agreement adduced by respondent, but not on the one possessed by the insurance company which settled the personal injury action, which stated "[subject to] full authority to settle, sign release and endorse check, as case was abandoned." However, we agree with petitioner that such a provision, even if agreed to by Sparber (the Hearing Panel had found that it was not agreed to), excused neither respondent's conversion of the funds nor his act of notarizing her forged signature on the release in violation of Executive Law § 135. Respondent's claim that the conversion was unintentional,

and due to naiveté and lack of prior experience with the use of a power of attorney, strains credulity. It is belied by the evidence that he altered his handwriting to resemble Sparber's.

Respondent is 54 years of age, has a record as an attorney which is otherwise unblemished, and which includes many instances of public and *pro bono* service for community and religious organizations. It is not seriously disputed that when respondent misappropriated and commingled the funds in question he was under emotional stress due to legal, administrative, and financial responsibilities thrust upon him when the attorney with whom he shared an office became seriously ill, and other office tenants defaulted on their share of the rent. He also had problems with his daughter, who had dropped out of school and run away from home on several occasions. The stress ultimately manifested itself in chest pains and breathing difficulties, requiring a two-day hospitalization in late September 1982. Even on these issues the Hearing Panel cites several instances in which the respondent's testimony lacked candor.

The psychiatrist who began treating respondent in March 1986 essentially testified that respondent had a passive-agressive personality with a mixed state of anxiety and depression, and a martyr complex. Based upon this diagnosis, and his interpretation of the hospital records and a note from respondent's personal physician, the psychiatrist opined that psychological stress could have played a role in respondent's poor judgment in a variety of situations.

We agree with petitioner that this testimony was too speculative to furnish an acceptable excuse. It was insufficient to establish the probability that the psychological stress affecting respondent in 1982 so impaired his judgment as to cause the offenses charged. *(Matter of Levine, supra; Matter of Wolf,* 73 AD2d 419 [1st Dept 1980]; *Matter of Marks, supra.)* Neither respondent's acts of restoring the converted funds, nor his public service, demonstrate such exceptional character as could appropriately be weighed against his disbarment. *(Matter of Pinello, supra,* at pp 65-66.)

Accordingly, the motion by petitioner Departmental Disciplinary Committee, for an order confirming the findings of fact and conclusions of law of the Hearing Panel, with its recommendation of disbarment, should be granted and respondent's name should be ordered stricken from the roll of attorneys in the State of New York.

Accordingly, the name of respondent is stricken from the roll of attorneys and counselors-at-law in the State of New York.

SULLIVAN, J. P., CARRO, ASCH, KASSAL and ROSENBERGER, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective March 5, 1987.