In the Matter of KENNETH F. KAPLAN (Admitted as KENNETH FRANKLIN KAPLAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 7, 1988

## APPEARANCES OF COUNSEL

*Sarah Diane McShea* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Nicholas C. Cooper* for respondent.

**OPINION OF THE COURT**

Per Curiam.

The respondent Kenneth F. Kaplan was admitted to practice in the Second Department on February 24, 1971 under the name Kenneth Franklin Kaplan. During the period herein pertinent, respondent maintained an office for the practice of law within the First Department.

The following facts are undisputed. Respondent was retained to represent Josephine Burton in a personal injury action which arose when she was struck by a van in the course of her employment duties. In settlement of the action, respondent received from the owner's insurance company a check dated January 25, 1980, for $25,000 payable to "Josephine Burton and Kenneth Kaplan, as attorney." Two days later respondent endorsed the check by signing both his and his client's name, and deposited the proceeds in a passbook savings account entitled "Diane G. Sternlicht ITF Kenneth F. Kaplan." (Ms. Sternlicht was then respondent's fiancée; in August 1981 they were married.) We accept as true, for the purposes of this proceeding, respondent's testimony that Mrs. Burton authorized him to endorse the check on her behalf.

The money in the account was used for personal expenses by respondent and Ms. Sternlicht, and the balance fluctuated as low as $8,601 in October 1980. Eventually, the account was closed. Between January 1980 and July 1985 respondent did not maintain any portion of the settlement proceeds in a special or escrow account.

Respondent's explanation with respect to his handling of the funds in this manner was that Mrs. Burton had requested that she be paid her portion of the settlement proceeds in cash because she was then on welfare and receiving food stamps. Since he expected to pay her share within a short period of time, respondent claims that he converted the funds into cash by depositing the insurance check into Ms. Sternlicht's bank account, and then segregating $25,000 into two envelopes containing $12,500 each, which he inscribed with Mrs. Burton's name, from a larger amount of cash which he and Ms. Sternlicht kept in her safe-deposit box.

According to respondent, the money was kept in several safe-deposit boxes until July 1985, when it was deposited into a newly opened escrow account for Mrs. Burton's benefit.

(Mrs. Burton had filed a complaint against respondent with the petitioner Departmental Disciplinary Committee in October 1984.) It was stipulated at the hearing that if Ms. Sternlicht (now respondent's wife) were called to testify, she would confirm the segregation of funds as testified to by the respondent. Respondent conceded that he was not a signatory on the safe-deposit boxes until August 1983, and until that date was only able to get access to the boxes through his fiancée.

During the 5½-year period that the funds were supposedly being maintained in successive safe-deposit boxes, respondent was encountering difficulties with regard to releasing the funds, due to his inadvertent failure to obtain the prior consent to the settlement of the third-party action of the workers' compensation carrier of Mrs. Burton's employer. Various proceedings, including an application to the Supreme Court under Workers' Compensation Law § 29 (5) to obtain the carrier's consent nunc pro tunc, were commenced to cure the error. These difficulties were not resolved until January 28, 1986, when a workers' compensation Judge directed that the $16,666.67 net proceeds of the settlement ($25,000 less one-third attorney's fees) be paid to Mrs. Burton. Mrs. Burton refused to accept respondent's tender of $16,666.67, and a later tender by him of the full $25,000.

In April 1987, during the pendency of hearings before the Departmental Disciplinary Committee, respondent ascertained that in December 1979 Mrs. Burton had assigned her recovery in the personal injury action to the Department of Social Services on account of public assistance that she had received. Respondent thereupon forwarded his check for $16,666.67 to the Human Resources Administration, successor to the Department of Social Services.

Respondent was charged by the Departmental Disciplinary Committee with the conversion to his own personal use of the funds in question, in violation of DR 1-102 (A) (4) and (6), and DR 9-102 (B) (3) and (4) of the Code of Professional Responsibility. As noted above, respondent's sole defense was that he had actually kept the funds segregated in safe-deposit boxes for 5½ years because he expected all during this time that a turnover of the funds to Mrs. Burton was imminent. He further explained that he did not place the funds into a special or escrow account because he feared his former wife might attach such an account, and because bank officers had expressed a reluctance to engaging in cash transactions of

$10,000 or more as that would entail filling out certain forms required by law in such cases.

After hearings held before a Panel of the Departmental Disciplinary Committee, the Panel issued its report unanimously rejecting respondent's testimony regarding the segregation or allocation of $25,000 in safe-deposit boxes. After an extensive and cogent analysis of the evidence presented, the Panel concluded:

"The simple fact is that no part of his client Mrs. Burton's money went into or came out of the safe deposit box. When the $25,000 check was realized upon in January 1980, no money went into the safe deposit box. When the Citibank Special Trust Account was set up in July 1985, no money came out of the safe deposit box to go into that account. For all the difference it made, the safe deposit box could just as well have been empty for those 5-½ years.

"As we reject the whole story of the segregation of cash in the safe deposit box, it follows that we have a simple case of an attorney receiving a check from a third party in settlement of his client's claim, depositing it in his fiancée's account, to which the attorney did not even have signatory powers, using the money for personal purposes, and not setting up an escrow account for 5-½ years, and then setting it up out of other funds. Thus, Respondent converted his client's money, misappropriating the specific funds in which she had a specific property interest, and remitting her for 5-½ years to a general creditor's status, at the mercy of whatever financial vicissitudes Respondent might be subject to."

The matter is now before us upon the Departmental Disciplinary Committee's petition and motion seeking an order pursuant to 22 NYCRR 603.4 (d) confirming the Hearing Panel's report, findings, conclusions and recommendations, and disbarring the respondent; and respondent's cross motion to disaffirm the report and dismiss the petition. The petitioner's motion is granted, and the respondent's denied. We confirm in toto the Hearing Panel's report, findings, conclusions and recommendations, and, accordingly, need not reach the question of whether conversion would have been established if respondent had been able to demonstrate to the Panel's and this court's satisfaction that the funds had in fact been held segregated in a safe-deposit box throughout the period in question. Respondent's contention that the Hearing Panel "impeached its determination" has been considered and is rejected as being without merit.

The respondent, having been found guilty of conversion, should be disbarred. *(Matter of Levine,* 101 AD2d 49.)

SANDLER, J. P., CARRO, MILONAS, ELLERIN and SMITH, JJ., concur.

Respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective July 7, 1988.