In the Matter of ELLIOTT H. POLLACK, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 10, 1989

## APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Jeffrey C. Hoffman* of counsel *(Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Elliott H. Pollack was admitted to practice as an attorney and counselor-at-law in the State of New York by the Appellate Division, First Judicial Department, on April 25, 1977. At all times hereinafter mentioned, respondent maintained offices for the practice of law within the First Judicial Department.

Respondent Elliott H. Pollack was charged with a violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6) in that he misappropriated and converted to his own use the proceeds of the sale of a house he had received on behalf of the Estate of Anna Levine (Estate). Respondent was also charged with neglect and failing to conclude diligently the administration of the Estate, in violation of DR 6-101 (A) (3).

After hearing, a Hearing Panel sustained all the charges with respect to respondent. It found that respondent represented the Estate of Anna Levine in a probate proceeding in Surrogate's Court, Kings County. Michael B. Pollack was the attorney of record and Elliott H. Pollack, Michael B. Pollack's associate and brother, handled the matter on Michael B. Pollack's behalf. The assets of the Estate consisted solely of the proceeds from the sale of a house located in Brooklyn, which totaled $24,065.

The Hearing Panel also found that, in March 1981, Elliott H. Pollack deposited the proceeds of the sale into a nonescrow passbook-savings account at the United Mutual Savings Bank. This account contained both office and client funds. Shortly after the deposit of the sale proceeds, the balance in the account dropped below $24,065 and, by March 31, 1982, the balance had fallen to $3,210.73. Elliott H. Pollack admitted that, except for $2,000, the money in the account was dis-

bursed for personal and business expenses unrelated to the Estate.

Between March 1981 and March 1984, respondent did not maintain any portion of the Levine proceeds in a special, escrow or attorney's account. The Panel found that the unauthorized withdrawals of the Estate funds from the account, and allowing the balance therein to drop below the required level, constituted acts of conversion by Elliott H. Pollack, in violation of DR 1-102 (A) (4) and (6).

We reject, as incredible, as did the Hearing Panel, respondent Elliott H. Pollack's defense that he had held the Estate funds in cash in a safe-deposit box. There was no evidence that any portion of the Estate funds went into or came out of the safe-deposit box. When money was withdrawn from the United Mutual account, none of it went into a safe-deposit box, and when the beneficiaries of the Estate were ultimately paid, no money came out of a safe-deposit box to cover such payments. Moreover, Elliott H. Pollack was never authorized by any beneficiary or the Estate's administratrix to place the Estate funds in a private box, nor did he offer any receipts or documents evidencing deposit of funds sufficient to cover the Estate's account in a safe-deposit box. The witnesses respondent produced at the hearing testified as to the existence of the safe-deposit box after the funds had already been removed from the account, and also could not testify as to its contents.

Although the sale proceeds were deposited in March 1981, the beneficiaries of the Estate were not paid by the respondent until 1984, only after some pressure was exerted by counsel, retained by one of the beneficiaries.

We conclude, as did the Hearing Panel, that Elliott H. Pollack converted to his own use the Estate funds, in violation of DR 1-102 (A) (4) and (6) of the Code of Professional Responsibility, and that his unauthorized withdrawal of the funds from the account for matters unrelated to the Estate, thereby allowing the balance to drop below the amount he was obligated to hold on behalf of the Estate, also constituted conversion, in violation of DR 1-102 (A) (4) and (6). Also, respondent neglected a matter entrusted to him by failing diligently to wind up the administration of the Estate, in violation of DR 6-101 (A) (3).

Absent extremely unusual mitigating circumstances, this court has consistently viewed conversion of funds belonging to a client or third party as grave misconduct warranting the

severe penalty of disbarment *(Matter of Malatesta,* 124 AD2d 62; *Matter of Walker,* 113 AD2d 254). An attorney who misappropriates funds is presumptively unfit to practice law *(Matter of Pressment,* 118 AD2d 270; *Matter of Marks,* 72 AD2d 399).

In those instances where this court has imposed a sanction other than disbarment upon an attorney who converted clients' funds, the determination has rested upon the fact that the attorney's conduct was unintentional and the result of careless or sloppy bookkeeping *(Matter of Engram,* 129 AD2d 115, *lv denied* 70 NY2d 611) or on the client's contemporaneous awareness of the attorney's disbursement of the escrowed funds and the nonsurreptitious conduct of the attorney *(Matter of Einhorn,* 88 AD2d 95). Respondent's conduct here does not fall within either category.

Accordingly, the motion by the Departmental Disciplinary Committee for an order confirming the findings of fact and conclusions of law of the Hearing Panel, with its recommendation of disbarment, should be granted and respondent's name ordered stricken from the roll of attorneys in the State of New York forthwith.

CARRO, J. P., ASCH, KASSAL, WALLACH and SMITH, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York effective as of February 10, 1989.