In the Matter of RICHARD J. ROSENTHAL, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 2, 1990

### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Richard J. Rosenthal,* respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Respondent Richard J. Rosenthal was admitted to the practice of law by this court on August 8, 1974. At all times

relevant herein, respondent maintained an office within the First Judicial Department for the practice of law.

Petitioner Departmental Disciplinary Committee, by petition dated February 14, 1990, seeks an order pursuant to 22 NYCRR 603.4 (d) confirming a report of the Hearing Panel, dated January 5, 1990, which recommended disbarment of respondent. Although served with notice of this petition, respondent has failed to interpose a response.

On or about May 22, 1989 respondent was served by petitioner with a notice of statement of charges. Charge one alleged that respondent converted to his own use $1,873.62 entrusted to him by his client, Fern Brudner (Brudner) and that he failed to segregate Brudner's funds in a client trust or escrow account in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6), DR 9-102 (A) and 22 NYCRR 603.15. Charge two alleged that respondent failed to return the aforesaid sum to Brudner and failed to return both the unearned portion of a $2,500 retainer and certain personal property belonging to Brudner in violation of DR 2-110 (A) (3) and DR 9-102 (B) (4). Charge three alleged that respondent willfully failed to satisfy a $4,699.47 default judgment, which Brudner obtained against him, in violation of DR 1-102 (A) (6). Charge four alleged that respondent refused to make good on a returned check issued by him to Dependable Personnel, Inc., which failure violated DR 1-102 (A) (6). Charge Five alleged that respondent failed to return certain corporate property belonging to his client Michael Borzak (Borzak) in violation of DR 6-101 (A) (3) and DR 9-102 (B) (4).

Respondent served an answer of general denial of the charges. Thereafter, a Hearing Panel convened, heard testimony and received documentary evidence on the charges on July 27, 1989 and August 10, 1989. Respondent appeared *pro se.*

With respect to charge one, Brudner testified that in July 1986 she was referred to respondent for the purpose of obtaining an uncontested divorce. On July 23, 1986 she provided respondent with a $2,500 retainer fee, per his request, and with documents pertaining to her taxes, medical insurance, cooperative apartment and car. Her check was deposited in respondent's account at Citibank, N.A. and cleared on July 25, 1986. Brudner never received a written retainer agreement but understood that respondent would contact her husband's lawyer and negotiate the terms of an amicable divorce.

Shortly thereafter respondent advised Brudner that it was customary in divorce proceedings for a lawyer to pay his client's bills. In reliance on this representation Ms. Brudner, on August 1, 1986, gave respondent her monthly bills totaling $1,873.62, along with a check in the amount made payable to respondent. The word "bills" was written by Brudner on the memo line of this check. The canceled check reveals that it was deposited into the same account as the $2,500 retainer. It also reveals that a comma and "Esq" were added after the payee's name and that the word "Reimbursement" was added after the word "bills" by someone other than Brudner. Ms. Brudner testified that her bills were never paid.

Respondent denied that the check for $1,873.62 was for the payment of Ms. Brudner's bills. He stated that, after learning from her husband's counsel that his client refused to cooperate in an amicable divorce and after concluding that the matter would be litigated, he asked Ms. Brudner for another $2,000 in legal fees. Respondent could not explain why Ms. Brudner then gave him only $1,873.62. Nor could he offer a reasonable explanation as to the notation "Reimbursement" added to the check.

Respondent characterized his account at Citibank, N.A. as a business account. He admitted using these moneys received from Ms. Brudner for his personal purposes.

With respect to charge two, failure to return $1,873.62 and the unused portion of the retainer, Ms. Brudner testified that she met with respondent on 7 to 10 occasions for a total of 14 hours. According to Brudner her divorce was discussed on only one of these occasions and on most occasions they discussed respondent's personal problems.

Upon learning that her bills had not been paid, Brudner made several unsuccessful attempts to speak with respondent by telephone. She then retained new counsel. On September 5, 1986 she wrote to respondent, *inter alia,* requesting the return of the $1,873.62 and a refund on the $2,500 retainer. Respondent, by mailgram, acknowledged his termination as her attorney, but accused Brudner of conduct which was "irrational and harmful to my practice and my life." He further threatened a lawsuit if Brudner did not stop telephoning, threatening and defaming him. Respondent did not mention the $1,873.62 or retainer refund.

Sylvia Goldschmidt, Ms. Brudner's new counsel, testified that she was retained on August 18, 1986. Two days later, she

wrote to respondent requesting that he turn over the file, including Brudner's personal papers, and that he refund any money due on the retainer. She received no reply and continued her attempts to reach respondent by telephone.

On September 10, 1986 Goldschmidt again wrote to respondent reiterating her earlier requests and further requesting the return of $1,873.62. Goldschmidt testified that her firm handles hundreds of matrimonial cases each year and had never taken money from clients to pay these clients' bills.

John Vassallo, Mr. Brudner's attorney testified that he had only 1 or 2 conversations, lasting a few moments, with respondent. The subject of these conversations was Mr. Brudner's desire to remove certain belongings from the marital residence. Vassallo wrote to respondent on August 11, 1986 regarding Mr. Brudner's personal belongings and indicating Vassallo's desire to be cooperative. No reply was received.

Vassallo had no substantive dealings with respondent about their respective clients' marital problems. He denied ever telling respondent that the matter would have to be litigated. Goldschmidt and Vassallo ultimately obtained an uncontested, negotiated divorce for the Brudners.

In contradiction, respondent told the Hearing Panel that he had worked at least 50 hours on the Brudner matter and, in fact, had submitted to Ms. Brudner a final bill in excess of $5,000. He was unable to produce his time records, a draft of a complaint and order to show cause he claims to have prepared, his copy of the final bill or his file in this matter. Respondent claimed that he spoke with Vassallo at various times, totaling 1 or 2 hours, in an attempt to negotiate a settlement. He also claimed to have spoken with Goldschmidt and given her a thorough explanation of the Brudner case.

Respondent's explanations as to the whereabouts of his Brudner file were contradictory. In May of 1987 he advised the Departmental Disciplinary Committee that the file was in his possession and that he would produce it. On July 23, 1989, in response to a subpoena, he wrote "all of these items were lost or stolen from my office some time ago." He testified before the Hearing Panel that his office had been burglarized in January and in April of 1987, and that the Brudner file was taken along with a television and other items. The Brudner file, however, was the only file which had disappeared in its entirety.

At the conclusion of testimony, the Hearing Panel credited

the testimony of Ms. Brudner and of attorneys Goldschmidt and Vassallo over that of respondent and sustained charges one and two, stating in pertinent part:

"Much testimony was given and documentary evidence introduced which support the fact that during the summer and fall of 1986, Respondent's financial situation was precarious * * *.

"We conclude that he extracted $1,873.62 from Ms. Brudner under the pretense that it was customary in a matrimonial matter for the attorney to pay his clients' bills. Respondent's representation regarding such a 'customary' practice was false, and, we find, known by him to be false when made. Respondent needed funds for personal purposes and, in total disregard of his obligations, he used his position as an attorney-at-law to deceive a client and to deprive her of her monies. Thus, not only has Respondent converted his client's funds by first commingling them and then by using them for personal purposes rather [than] for payment of her bills—but he is guilty of obtaining the $1,873.62 from Ms. Brudner through a fraud.

"Moreover, Respondent has not repaid these monies, even after his client was forced to sue him to obtain that which is rightfully hers."

The Hearing Panel dismissed charge three which involved respondent's failure to satisfy a $4,699.47 default judgment, reasoning that an attorney's failure to satisfy a monetary judgment against him is not alone a sanctionable offense. The Panel dismissed charge four, relating to respondent's issuance of a bad check, since the check ultimately cleared payment. Charge five was also dismissed by the Panel which concluded that the purported failure of respondent to return certain corporate documents to his client Michael Borzak had not resulted in any significant harm or inconvenience to Borzak.

In recommending that respondent be disbarred, the Hearing Panel pointed to respondent's total lack of candor and plainly preposterous explanations for his conduct. It found to be unambiguous and credible the testimony of the other witnesses who uniformly described respondent as uncooperative, uninterested and inaccessible.

The evidence before the Hearing Panel more than adequately supports its findings and conclusions that respondent is guilty of professional misconduct in that he converted client funds in violation of Code of Professional Responsibility DR 1-

66

102 (A) (4) and (6), DR 9-102 (A) and 22 NYCRR 603.15, and that he failed to return client funds in violation of DR 2-110 (A) (3) and DR 9-102 (B) (4).

Absent extremely unusual mitigating circumstances, this court has consistently viewed conversion of client funds as grave misconduct warranting disbarment. *(Matter of Schmidt,* 145 AD2d 103, 108 [1st Dept 1989]; *Matter of Malatesta,* 124 AD2d 62, 64 [1st Dept 1987], *lv denied* 69 NY2d 607 [1987], *cert denied* 484 US 829 [1987]; *Matter of Walker,* 113 AD2d 254, 257 [1st Dept 1985], *mot to dismiss appeal granted* 67 NY2d 917 [1986].) An attorney who misappropriates funds is presumptively unfit to practice law. *(Matter of Pressment,* 118 AD2d 270, 273 [1st Dept 1986], *lv denied* 68 NY2d 608 [1986].)

No mitigating circumstance occasions a different result here. *(Matter of Altschuler,* 139 AD2d 311 [1st Dept 1988]; *Matter of Engram,* 129 AD2d 115 [1st Dept 1987], *lv denied* 70 NY2d 611, *appeal dismissed* 71 NY2d 889 [1988].)

Although the sum of money is not exceptionally large *(see, i.e., Matter of Schmidt, supra),* the manner in which respondent obtained the money, his failure to make restitution even after a judgment was entered, and his lack of remorse and continuous efforts to justify his conduct by offering conflicting and totally incredulous explanations warrant imposition of the most severe sanction.

Accordingly, respondent's name shall be stricken from the role of attorney's forthwith.

SULLIVAN, J. P., CARRO, MILONAS, ROSENBERGER and SMITH, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective forthwith.