[628 NYS2d 945]

In the Matter of CAROL A. SAFIER, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 27, 1995

### APPEARANCES OF COUNSEL

*Vanessa Merton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Carol A. Safier, was admitted to the practice of law in the State of New York by the First Judicial Department on January 12, 1981.

The respondent was charged with 91 separate counts of professional misconduct. The Hearing Panel sustained 68 of the charges. Over a period of six years, it was proved that respondent engaged in a pattern of unethical practices and professional misconduct, seriously damaging and prejudicing at least 11 clients, as well as numerous people not her clients. The misconduct included illegally mortgaging a client's property, without his authority or knowledge, for $275,000 and converting the resulting funds, as well as other client funds, to her own use; commingling of client and attorney funds; failing to account properly to a client; failing to maintain required financial records of client funds; accepting employment when her independent professional judgment was impaired by a conflict of interest with a client; neglecting legal matters entrusted to her and failing to perform legal work for which she had been paid; lying to her clients; suggesting that

she could exercise undue influence on a Judge; lying to a tribunal; and charging excessive fees.

The charges further specified that on numerous occasions respondent failed to produce requested bank records, documents, and other information sought by the Departmental Disciplinary Committee, and made affirmative misrepresentations of fact to the Committee, in violation of Code of Professional Responsibility DR 1-102 (A) (4).

By Order of this Court entered January 28, 1993, respondent was suspended from the practice of law pending the conclusion of disciplinary proceedings and until further order of this Court, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (ii) based upon her failure to cooperate with the Committee in its investigation and substantial admissions under oath of serious professional misconduct. (Matter of Safier, 187 AD2d 198 [1st Dept 1993].)

Hearings on the charges were held before a Hearing Panel during the months of March through September 1993, on 16 separate days. During the hearings the following facts were presented and conclusions reached, with respect to her representation of Mr. Octavio Hinzpeter.

In September 1986, Mr. Hinzpeter, a Chilean businessman, retained respondent to represent his interests in various business transactions, principally the management of a cooperative located on Mercer Street in New York City. At respondent's request, Mr. Hinzpeter executed an unrestricted Power of Attorney to accomplish these purposes.

Mr. Hinzpeter had paid the full purchase price of $250,000 for the Mercer Street property, but at the time he retained respondent, the property was held in the names of four people, including Mr. Hinzpeter, his brother Carl and two others. Mr. Hinzpeter instructed respondent to obtain full title to the property in his name and to rent it out so that the cost of maintenance and utilities would be covered by the rent.

Respondent did negotiate the conversion of the title to Mr. Hinzpeter; however, she did not arrange for the rental of the Mercer Street property to a tenant who paid rent, although there was testimony that the property was occupied.

Between September 1986 and January 1989, Mr. Hinzpeter remitted checks and wire transfers to respondent in excess of $200,000 for the exclusive and limited purpose of paying necessary maintenance and repair expenses for the Mercer Street property.

In 1987 respondent mortgaged the Mercer Street property, without Mr. Hinzpeter's knowledge or consent. She admitted receiving the proceeds of $275,000. Respondent did not inform Mr. Hinzpeter of the receipt of these proceeds, and she did not place them in a trust account for Mr. Hinzpeter. Mr. Hinzpeter never learned of the mortgage until he came to New York in 1988 and attempted to sell the property.

Respondent admitted that she disbursed both the money that Mr. Hinzpeter had sent her for the Mercer Street property expenses and the proceeds of the unauthorized mortgage of the Mercer Street property for a variety of personal, legal, medical, and entertainment expenses of hers and her friends. Respondent spent a substantial amount of Mr. Hinzpeter's money on the rent, debts and other expenses of an art gallery located at 38 East 57th Street in New York, known as the Terne Gallery.

Respondent admitted that she did not place the proceeds of the mortgage or other money transmitted to her by Mr. Hinzpeter for specific purposes into an escrow or client fund account, but instead commingled it with her own personal and office accounts and disbursed it.

As a result of respondent's continuing refusals to provide an accounting, in November 1989, Mr. Hinzpeter had to hire an attorney and resort to a formal motion for an interlocutory decree compelling accounting. The motion was granted and an order was issued directing respondent to provide an accounting by January 1990.

Finally, on March 19, 1990, respondent provided a formal accounting. Mr. Hinzpeter incurred legal expenses of approximately $70,000 in this proceeding.

In November 1991, an order was entered in the civil action commenced by Mr. Hinzpeter against respondent striking respondent's verified answer and ordering an inquest as to Mr. Hinzpeter's damages. After a hearing on the inquest, judgment was entered in the amount of $407,908.11, with interest from the date of the commencement of the action.

By letter, first on November 22, 1991, and again on June 11, 1992, Staff Counsel requested records and ledgers of respondent's escrow, office, and personal bank accounts during the time that she represented Mr. Hinzpeter. Respondent admitted that although she was aware of her obligation to produce such records, she never submitted the requested records.

As a result of mortgaging the property of her client, Mr.

Hinzpeter, without his knowledge and consent, and by converting the proceeds to her own use and benefit, respondent was charged with engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102 (A) (4).

By commingling Mr. Hinzpeter's funds with her personal and office business accounts, respondent was charged with failing to deposit client funds in an identifiable bank account, in violation of DR 9-102 (A) (since Sept. 1, 1990, DR 9-102 [A] and [B]) and 22 NYCRR former 603.15 (b).

By issuing checks payable to cash from funds held for the benefit of Mr. Hinzpeter, respondent was charged with engaging in conduct in violation of DR 9-102 (E) and 22 NYCRR former 603.15 (d).

By failing to promptly notify Mr. Hinzpeter of her receipt of over $200,000 in unauthorized mortgage proceeds, respondent was charged with engaging in conduct in violation of DR 9-102 (B) (1) (since Sept. 1, 1990, DR 9-102 [C] [1]).

By failing to render appropriate accounts to her client, Mr. Hinzpeter, and by failing to maintain complete records of all of his funds, respondent was charged with engaging in conduct in violation of DR 9-102 (B) (3) (since Sept. 1, 1990, DR 9-102 [C] [3]).

By failing to maintain or produce in response to a notice issued in connection with a complaint before the Committee, the financial records of "any * * * bank account which concerns or affects the lawyer's practice of law" required by DR 9-102 (D), respondent was charged with engaging in conduct in violation of DR 9-102 (H) and (I) and 22 NYCRR former 603.15 (c), (j) and (k).

By failing to cooperate with the investigation of the Committee of the Hinzpeter matter and to produce the records requested by the Committee, respondent was charged with engaging in conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5).

Based upon the evidence presented, the Hearing Panel sustained all of those charges.

The Hinzpeter matter is illustrative of a pattern of dishonest representation involving numerous other clients. In all of these representations, respondent was charged with neglecting to perform the legal work entrusted to her, charging excessive fees, and misrepresenting the status of the cases to her clients. On occasions she participated in filing bad faith proceedings

(bankruptcy), prepared and filed unsigned notarized documents, suggested to a client that she could improperly influence a sitting Judge and made false statements to an appellate court.

Based upon the evidence presented the Hearing Panel sustained all of those charges.

Further, there were charges sustained with regard to one Mr. Shahab Ebrahimigeorge involving neglect and dishonesty in connection with litigation against a cooperative corporation; one Mr. Herman Margules involving neglect, dishonesty and excessive fees; Sheldon Licht, an architect who obtained a judgment against respondent for an unpaid fee; one Finest Coperis & Equipment, Inc., for issuing checks without having sufficient funds in the account to cover the check; one Arista Court Reporting Co., for again issuing a check returned for insufficient funds and failing to pay a judgment issued thereon; one Malcom Choset, for failing to pay an outstanding legal judgment in the sum of $24,000 entered June 1991; and one Peter Magee, for failing to cooperate with the Committee with regards to a complaint made.

Evidence was also presented to the Hearing Panel that respondent, after the interim suspension issued by this Court, failed to comply with Court Rules requiring the notification of her clients concerning her suspension and the service and filing of an affidavit of compliance.

Additionally, respondent failed to pay monies withheld by her professional corporation for taxes which resulted in outstanding judgments and warrants against her to the New York State Unemployment Insurance Division in amounts in excess of $100,000.

The evidence proffered by respondent in mitigation was either false or insubstantial and of no weight in the face of the pattern of egregious misconduct set forth above.

By petition dated February 7, 1995, the Departmental Disciplinary Committee is now seeking an order confirming the Hearing Panel's report, dated June 22, 1994, and imposing the recommended sanction of disbarment.

Respondent's attorney was served with a copy of the Committee's petition by mail on February 17, 1995. To date, no response has been interposed by either respondent or her attorney.

A review of the evidence presented to the Hearing Panel indicates that there is ample support for the Hearing Panel's finding that respondent has engaged in a six-year pattern of

serious professional misconduct including, *inter alia,* conversion of client funds, in an amount in excess of $400,000; mortgaging a client's property illegally and without his authority or knowledge; failing to properly account for client funds; failing to keep financial records of clients' funds; having conflict of interest positions with a client; making a false representation to a tribunal; asserting the ability to improperly influence a tribunal; neglecting nine legal matters; making false representations to her clients concerning the status of their cases; charging an excessive fee; and refusing to satisfy judgments against her. With respect to her dealings with the Disciplinary Committee, respondent is guilty of 14 counts of failing to cooperate with the Committee in its investigations, three counts of making false representations to the Committee and six counts of engaging in conduct prejudicial to the administration of justice. In addition, respondent failed to notify her clients of her interim suspension and failed to file an affidavit of compliance as required by the Rules of this Court.

Absent extremely unusual mitigating circumstances this Court has consistently held that the intentional conversion of funds belonging to a client or a third party is grave misconduct warranting the sanction of disbarment. *(Matter of Schmidt,* 145 AD2d 103 [1st Dept 1989]; *Matter of Malatesta,* 124 AD2d 62 [1st Dept 1987]; *Matter of Walker,* 113 AD2d 254 [1st Dept 1985].) An attorney who misappropriates funds is presumptively unfit to practice law. *(Matter of Pressment,* 118 AD2d 270, 273 [1st Dept 1986], citing *Matter of Marks,* 72 AD2d 399, 401 [1st Dept 1980].)

The repeated acts of conversion established by the evidence before the Hearing Panel standing alone warrant disbarment. The entire record presents an appalling account of professional dereliction, amorality, and disgrace. We strongly recommend presentation of this matter to the Grand Jury.

Petitioner's motion to confirm the Hearing Panel's report is granted and respondent is disbarred. Her name shall be removed from the roll of attorneys and counselors-at-law forthwith.

MURPHY, P. J., SULLIVAN, RUBIN, ROSS and WILLIAMS, JJ., concur.

Application granted, the Hearing Panel's report confirmed, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York forthwith.