[663 NYS2d 153]

In the Matter of ALAN J. WEINER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 14, 1997

### APPEARANCES OF COUNSEL

*Raymond Vallejo* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Jerome Karp* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Alan J. Weiner, was admitted to the practice of

law in the State of New York by the First Judicial Department on January 18, 1982. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges dated November 12, 1996 in which it was alleged that he violated Code of Professional Responsibility DR 1-102 (A) (4), (5) and (8), DR 6-101 (A) (3) and DR 9-102 (B) (1) (22 NYCRR 1200.3, 1200.30, 1200.46), by *inter alia*, intentionally converting client funds, making misrepresentations to the Committee and to a Judge, violating a court directive and neglecting a legal matter. Respondent filed an answer in which he admitted many of the factual allegations in the charges. On February 14, 1997, the parties entered into a prehearing stipulation containing undisputed facts.

A Hearing Panel convened thereafter on February 20, 1997 to hear testimony and receive evidence relating to the charges. Since respondent had admitted most of the factual allegations, the hearing primarily concerned respondent's mitigation evidence.

Charges One through Five arise out of respondent's representation of Robert and Kerrie Heitz in a landlord-tenant action brought by their former landlord, Lorenzo Troni, for back rent. The parties signed a stipulation of settlement whereby the Heitzes agreed to pay the back rent to Troni. The Heitzes delivered a check to respondent for $9,000 payable to respondent, which was to be forwarded to Troni. Respondent initially deposited the check in his New Jersey escrow account, and drawing on this account, sent Troni's counsel a $9,000 check. Troni's counsel returned the check because he had been discharged as counsel and also because Troni declined to accept the $9,000 in settlement of the case.

Shortly thereafter, respondent transferred the $9,000 from his New Jersey escrow account to his New York escrow account. In approximately August 1993, respondent placed all or part of the $9,000 escrow funds into his business account and proceeded to spend the escrow funds on personal matters. Between August 30, 1993 and December 30, 1993, the balance in respondent's New York escrow account remained below $9,000. Respondent did not have authorization to use any portion of the $9,000 escrow funds during this time period. Accordingly, the Panel sustained Charge One that, by intentionally convert-

ing to his own use part of the $9,000 he was obligated to hold in escrow for the Heitzes, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

As a result of Troni's refusal to accept the $9,000 settlement, a hearing on the matter was scheduled for February 15, 1994 in Civil Court, New York County. On that date, respondent falsely represented to the court that he was holding the $9,000 back rent in his escrow account; in fact, the balance on that date in his escrow account was only $12.60. As a result, the Panel sustained Charge Two that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

Although the court directed respondent to send Troni a check for $9,000 on February 15, 1994, in settlement of the matter, respondent failed to comply. The Panel, therefore, sustained Charge Three that respondent engaged in conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5).

Subsequently, pursuant to a complaint filed by Troni with the Departmental Disciplinary Committee, depositions were conducted by staff counsel on November 2, 1995 and January 26, 1996. At both of these depositions, respondent falsely testified that the Heitzes gave him permission to use the escrow funds as a "loan." Accordingly, the Panel sustained Charge Four that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

Respondent claimed at the depositions to have sent $9,000 drawn on his escrow account to Troni on March 4, 1994. At that time, however, the balance in respondent's escrow account was only $1.60. As a result, the Panel sustained Charge Five that, by sending an escrow check to a third party when he knew there were insufficient funds, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

Charge Six arises out of respondent's representation of Marilyn Quinones in a divorce action. Respondent failed to file for a default judgment within the statutory requirement of one year from service of the complaint; filed defective default judgment papers; failed to timely place the matter on the court calendar; filed defective motion papers for permission to place the matter on the uncontested divorce calendar; filed a defective order for settlement; misplaced the file on the matter; and failed to return Quinones' telephone calls and to advise her of the status

of her divorce action from June 1992 to May 1994. Based on the foregoing, the Panel sustained Charge Six that respondent neglected a legal matter. Based on the totality of the misconduct in Charges One through Six, the Panel sustained Charge Seven that respondent's actions constitute conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (8).

As a sanction for respondent's misconduct, the Panel recommended that respondent be disbarred. The Panel noted that this Court has repeatedly held that, absent unusual mitigating circumstances, the conversion of funds belonging to a client or a third party constitutes grave professional misconduct warranting disbarment *(see, e.g., Matter of Farrell,* 218 AD2d 38, 39; *Matter of Kurtz,* 174 AD2d 207).

The Panel specifically rejected respondent's mitigation arguments. First, the Panel rejected respondent's argument that he lacked venal intent, pointing out that "dishonest and deceitful conduct" accompanied the conversion. Second, the Panel found that respondent had failed to demonstrate a causal connection between respondent's psychological problems and his conversion, false statements and neglect. The Panel cited to the testimony of respondent's psychiatrist wherein he stated that respondent's Attention Deficit Disorder contributed to respondent's misconduct, but was not a direct cause. Third, the Panel took into account respondent's prior disciplinary history and the fact that he had also neglected a legal matter. Respondent was issued a Letter of Admonition dated September 8, 1995 for violating DR 7-102 (A) (1) (22 NYCRR 1200.33), which prohibits a lawyer from filing a vexatious and meritless lawsuit. Fourth, the Panel found that the nine character letters submitted by respondent did "not present the kind of extraordinary personal picture that might cause the Panel to alter its recommendation". Finally, the Panel concluded that respondent's remission of the misappropriated funds the same week as the hearing did not excuse his wrongful conduct.

The Departmental Disciplinary Committee now seeks an order confirming the Panel's findings of fact and conclusions of law, and the recommendation that respondent be disbarred. Respondent does not dispute the charges against him, but objects to disbarment. Respondent asserts that the Panel erred in finding that the psychiatric testimony adduced at the hearing failed to establish a direct causal connection between respondent's disorder and his misconduct. Respondent contends that the evidence of such a connection warrants a lesser sanction.

Although dehors the record, respondent relies on an affidavit of Dr. Becker in which Dr. Becker explains how respondent's Attention Deficit Disorder, combined with other psychological problems, led respondent to engage in the misconduct that is the subject of this proceeding. Most notably, in paragraph 11 of his affidavit, Dr. Becker states: "Put another way, the Respondent has a history of causing his own problems, to shoot himself in the foot, so to speak. Because of the Respondent's organizational problems, there was a large amount of work that had been delayed, or put off. This extreme stress caused the Respondent to do something that was unconsciously aimed at getting himself disbarred. This self-destructive urge is clearly causally related to the Respondent's lack of self-esteem, organizational and Attention Deficit Disorder problems. Thus the Respondent's misappropriating escrow funds is causally related to his Attention Deficit Disorder, organizational problems and lack of self-esteem."

Respondent further asserts that Dr. Becker's testimony that respondent's treatment has been successful in alleviating respondent's stress and feelings of being overwhelmed lends credence to the claimed causal connection between respondent's misconduct and his psychiatric condition.

Respondent's position is without merit. Although evidence of a causal connection between psychological and personal problems and an attorney's egregious misconduct may be a basis for a less severe penalty *(see, Matter of Levine*, 101 AD2d 49; *Matter of Driver*, 129 AD2d 119), the evidence in this case of such a connection is speculative *(see, Matter of Malatesta*, 124 AD2d 62). Even assuming that a psychological disorder, such as Attention Deficit Disorder, might tend to explain respondent's neglect of a legal matter, respondent has failed to demonstrate that it, or other psychological difficulties, caused him to steal money from clients and then lie about it.

The remarks of this Court in *Matter of Gieger* (170 AD2d 134, 136) are applicable: "Despite the attempt by respondent to depict his transgressions as the consequence of his myriad psychological and personal problems, he has failed to establish any causal connection between his difficulties and the theft of money from clients. The fact is that every person is confronted with stress arising out of the complications of daily life, and the existence of personal problems, absent an extraordinary situation not here apparent, does not explain, much less justify, stealing money from clients."

Accordingly, the petition is granted. The Panel's findings, conclusions, and its recommendation of disbarment are

confirmed. Respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York.

SULLIVAN, J. P., NARDELLI, WILLIAMS, TOM and COLABELLA, JJ., concur.

Petition granted, and the Hearing Panel's findings, conclusions and recommendation confirmed, and respondent disbarred from the practice of law, effective October 14, 1997, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York.